PERCY T. LITCHFIELD vs. THE CITY OF BRIDGEPORT
ET ALS.

Third Judicial District, Bridgeport, October Term, 1925.

WHEELER, C. J., CURTIS, KEELER, MALTBIE and HAINES, Js.

In construing a statute, the intention of the legislature can be shown only by its vote; neither the ideas nor purposes privately entertained or expressed by its members or by the committee reporting the bill or by those who urged or opposed its passage, are relevant or material.

If a fact would be irrelevant and immaterial if offered in evidence or found by the trial court, it is none the less so when incorporated in an agreed statement of facts.

A change will never be imported into the wording of a statute by judicial construction, unless it is necessary in order to carry out a plain legislative intent.

An Act (Chapter 438 of the Special Laws of 1925) authorizing the city of Bridgeport, through its common council, to issue bonds in a sum not exceeding $500,000 and to apply the proceeds for the purpose of laying permanent pavements, provided that "the mayor or the city engineer of said city shall advertise for bids for paving said streets," and that "the contract for such paving shall be let by the mayor or the city engineer to the lowest responsible bidder." In the advertisement for bids prepared and distributed by the mayor and the city engineer, it was specified that the surfacing material must be Warrenite, a patented paving mixture manufactured by the W. Co., which, under the terms of an agreement filed with the city, obligated itself to furnish its product at a fixed, reasonable price to all other bidders. Three contracts for separate portions of the work were subsequently let in accordance with these specifications, one to the B. Co. and two to the W. Co., the performance of which the plaintiff, a taxpayer, sought to enjoin in the present action on the ground that the specification by the city officials of a patented surfacing material constituted a denial of the competitive bidding contemplated by the Act. Held that this claim was without merit,

since the Act could not be construed to deprive the city officials of their proper function of determining and prescribing the kind of pavement best adapted to the needs of the community; and that the prime essential of competitive bidding—equality among the bidders—was met by the terms of the agreement filed by the W. Co. with the city.

After providing that the avails of the bond issue should be expended for laying upon certain named streets "permanent pavement of concrete or surfacing material on a concrete, brick, granite block or bituminous concrete base," the Act further authorized the "paving of such other streets with such pavement as the city engineer may ·recommend." *Held* that, while the words "such pavement" in the last clause were not free from ambiguity, they must be construed, in view of the obvious purpose of the Act to provide for pavement of a permanent character, to refer back to the earlier description of "concrete or surfacing material on a concrete, brick, granite block or bituminous concrete base"; and that, therefore, two contracts made by the city with the W. Co. for the laying of mere surfacing material without the permanent base specified in the Act, were not within its terms.

It further appeared that the resolution of the common council providing for the issuance of the bonds, recited that the proceeds were to be applied "for the purpose of laying permanent pavement of concrete or surfacing material upon a concrete, brick, granite block or bituminous concrete base." *Held* that this language conclusively demonstrated the invalidity of the two contracts for surfacing material only, since it is an established principle that the avails of a bond issue, when appropriated for a specific purpose, can be diverted to no other.

Argued November 6th—decided December 23d, 1925.

ACTION for an injunction to restrain the defendant city of Bridgeport and its officials from proceeding with the execution of certain pavement contracts alleged to be illegal and void, brought to the Superior Court in Fairfield County and reserved by the court (*Booth, J.*), upon an agreed statement of facts, for the advice of this court.

The General Assembly at its January Session, 1925, by an Act approved June 12th (Special Laws, Chap. 438) authorized the defendant city to issue bonds for the purpose of constructing pavements on its highways, the first section of which Act is as follows:

"Section 1. The common council of the city of Bridgeport is authorized, when in legal meeting assembled, by a vote of a majority of the members of said body, present and absent, and subject to the approval of the mayor as provided in the charter of said city, to issue, under the corporate name and seal and upon the credit of the city of Bridgeport, bonds to be denominated, 'Pavement Bonds, Series E,' in a sum not exceeding five hundred thousand dollars, the avails thereof, when sold as hereinafter authorized, to be applied for the purpose of laying, upon the following-named streets of said city, or such portions thereof as the city engineer may recommend, permanent pavement of concrete or surfacing material on a concrete, brick, granite block or bituminous concrete base: Water Street, East Washington Avenue, South Main Street, Boston Avenue, Railroad Avenue, North Avenue, Middle Street and Housatonic Avenue and upon East Main Street tracks; and for the paving of such other streets with such pavement as the city engineer may recommend. The mayor or the city engineer of said city shall advertise for bids for paving said streets as herein provided. The contract for such paving shall be let by the mayor or the city engineer to the lowest responsible bidder. All bids therefor shall be opened in public and the work of constructing and laying such pavement shall be performed under the direct supervision of said city engineer."

Pursuing the authority of this Act on June 15th, the common council of the city adopted a resolution, the parts of which material in the present case are as follows:

"RESOLVED, that the City of Bridgeport, pursuant to authority conferred upon it by an Act of the General Assembly of the State of Connecticut, entitled 'An Act

Authorizing the City of Bridgeport to issue Bonds,' approved June 12, 1925, issue the following, to wit:

"Bonds to be denominated 'Pavement Bonds, Series E,' amount $500,000, the avails thereof to be applied for the purpose of laying permanent pavement of concrete or surfacing material on a concrete, brick, granite block or bituminous concrete base on the Streets in the above-described Act."

On or about July 1st, the mayor and the city engineer prepared specifications for the pavement of certain streets in the city, which were distributed, and for the work specified bids were called for by advertisement and publication. A copy of these specifications is annexed to the complaint in the action, and is made part of the agreed statement hereinafter referred to. The specifications provide that all of the streets to be paved should be surfaced with the Warrenite-Bitulithic surface mixtures. Pursuant to the specifications and advertisement, proposals were received at the office of the mayor on July 7th, 1925. By the terms of the specifications, it was provided that Warren Brothers Company, owner of the patents used in the construction of the Warrenite-Bitulithic pavement, would file with the city an agreement to furnish any contractor desiring to bid upon the work the necessary Warrenite-Bitulithic surface mixtures for use in compliance with the description of the work, together with a license to use all patents required in the construction of the Warrenite-Bitulithic pavement as described in the specifications. Prior to July 7th, 1925, this company did file with the city an agreement for the benefit of all bidders upon the work, obligating the company to furnish all necessary quantities of Warrenite-Bitulithic surface mixtures mixed ready for use, in accordance with the section termed "Wearing Surface" in the specifications, at a definite, reasonable price, which

price included a license to use all the patents required
in the construction of the Warrenite-Bitulithic pave-
ment as described in the specifications.  By the terms
of the specifications, the work to be contracted for was
divided into three classes, A, B, and C.  Class A related
to those streets wherein it was proposed to lay a
Warrenite-Bitulithic pavement upon a concrete, brick,
granite block or bituminous concrete base.  Classes
B and C related to those streets in which the Warren-
ite-Bitulithic pavement was to be laid without either a
concrete, brick, granite block or. bituminous concrete
base.  Class A related to those streets where, by reason
of traffic conditions, it was deemed essential to have
a base such as is described in the Act.  Classes B and
C related to other streets where, by reason of traffic
conditions, it was deemed nonessential that the sur-
facing material be laid upon such a base.  The laying
of a surfacing material upon a concrete, brick, granite
block or bituminous concrete base, in the streets desig-
nated in Classes B and C, would result in an increase of
the aggregate cost of pavement in the two classes com-
bined, of from $130,000 to $280,000, according to the
material used for the base.  In the streets included in
Class A, provision was made for employing the existing
brick or granite block pavement as a base.  But in the
streets where no such brick or granite block pavement
existed, the building of a brick or granite block pave-
ment for the sole purpose of a base would be wasteful
and improper engineering practice.  During the past
twelve years, seventy-two miles of Warrenite-Bitulithic
pavement have been laid upon the streets of the city.
The Warrenite-Bitulithic pavement is a patented pave-
ment and is manufactured and laid by Warren Broth-
ers Company, a corporation.

On July 7th, 1925, the city received five bids on
Class A, four bids on Class B, and four bids on Class

C. On Class A, C. W. Blakeslee & Sons, of New Haven, Connecticut, was the lowest bidder, and the contract was let by the mayor and city engineer to C. W. Blakeslee & Sons as being the lowest responsible bidder under the specifications for this class of work. The Warren Brothers Company was the lowest responsible bidder for Classes B and C, and the mayor and city engineer let the contracts for the work to this corporation as being the lowest responsible bidder for either and both of these classes of work. Among the bidders who offered proposals for the work under Class A was the Silliman & Godfrey Company of Bridgeport, Connecticut, who bid upon the laying of a surfacing material called sheet asphalt upon the specified base instead of the Warrenite-Bitulithic pavement called for in the proposals. In this bid the Silliman & Godfrey Company offered to do the work called for in the specifications for a sum less than $3,000 lower than the bid of C. W. Blakeslee & Sons. The bid of the Silliman & Godfrey Company on Class A was rejected because it did not conform with respect to the surfacing material to the provisions of the specifications. The city has let the contracts for Class A to C. W. Blakeslee & Sons and for Classes B and C to Warren Brothers Company. The bonds have been sold, the proceeds thereof are in the treasury of the city, and the city is prepared to go forward with the work of pavement.

In the agreed statement of facts there are included certain statements as to the points in dispute between the promoters of the Act and its opponents in the form first offered in the hearing before the committee on finance of the General Assembly, and the intent of the committee as embodied in the provisions of the bill reported and passed.

On July 14th, 1925, the plaintiff brought the present

action, returnable to the first Tuesday of September, 1925, and on July 21st, obtained a temporary injunction restraining the city and certain of its officials from carrying out the paving contracts made by it as hereinbefore described, or from making any payments on account of the same.

In the complaint the plaintiff alleges that the action of the city in awarding the contracts to the parties above named was invalid and contrary to law and illegal in that the contracts were awarded without free and unlimited competition, by reason of the surfacing being restricted to the Warrenite-Bitulithic mixture, and that the specifications on which the same were founded are not drawn in accordance with the provisions of the Act as to the general construction of the pavement with reference to its permanence. These claims will be considered at large in the opinion. An answer was filed by defendants, but no trial thereon was had, and the parties agreed to a reservation on the facts substantially as above set forth. Further facts appear in the opinion.

The questions on which the advice of this court is sought are as follows: "(1) Was the award of the contract A to C. W. Blakeslee & Sons a letting to the lowest responsible bidder within the meaning of the Special Act of 1925? (2) Was the award of the contracts B and C to Warren Brothers Company a letting to the lowest responsible bidder within the meaning of the Special Act of 1925? (3) Was it lawful for the mayor and city engineer, or for the mayor upon the recommendation of the city engineer, to restrict the bidding for the surfacing material of the pavement to the Warrenite-Bitulithic surfacing material? (4) Is it lawful for the City of Bridgeport, through the mayor and city engineer, or both of them, to expend the proceeds of the bond issue of 1925 for laying pavement upon

streets other than those specially named in the Act
without requiring and providing for a concrete, brick,
granite block or bituminous concrete base?"

*Edward K. Nicholson,* for the plaintiff.

*William H. Comley,* with whom was *Alexander L.
DeLaney,* for the defendants.

KEELER, J.   The first three questions propounded
for the advice of this court depend fundamentally upon
the right of the city engineer to designate in the speci-
fications for road surfacing a patented article.   The
first and second questions involve plaintiff's claim that
the specifications issued necessarily resulted in frustrat-
ing the clearly expressed intent of the Act that the
contracts should be let to the lowest responsible bid-
ders.   The third question involves the right generally
to specify a patented article in connection with the
competitive bidding.   As a preliminary question plain-
tiff strongly urges the consideration of the views of
the various parties as presented before the finance
committee of the General Assembly, and the expressed
understanding of the committee as to the meaning of
the bill by them reported to the Assembly and after-
ward passed, as being an important and even control-
ling factor in the interpretation of the Act.   We cannot
sustain this contention. The intention of the legislature
is to be gathered from the words of the enactment,
taken in connection with prior legislation contained in
the city's charter and such surrounding facts as to the
state of the art of road-making, and usual methods of
attaining satisfactory results, structural and financial,
of which the court may take judicial notice.   The
claims of the contestants before the committee and the
ideas which the committee may have entertained are
not to be regarded.   Had the Superior Court proceeded

to a trial in the instant case with a view to finding the facts, evidence tending to show the legislative purpose by what occurred at a committee hearing and by conclusions of the members of such committee would not have been admissible. In *State* v. *Blake,* 69 Conn. 64, 75, 36 Atl. 1019, a claim was made to introduce evidence of what occurred at a committee hearing, and the evidence was excluded by the trial court, and its action sustained on appeal. In that case we said: "One ground for such ruling was that whatever took place before said committee was not made known to the legislature, and that the private reason which influenced the individual members of the legislature could not be shown for the purpose of affecting a legislative Act. The intention of the legislature can only be shown by its vote. *Fletcher* v. *Peck,* 6 Cranch [10 U. S.] 87; *Soon Hing* v. *Crowley,* 113 U. S. 703 [5 Sup. Ct. 730]; *Flint & F. Plank Road Co.* v. *Woodhull,* 25 Mich. 99; Sutherland on Stat. Construction, § 430; Endlich on Statutes, § 32." We have sustained this doctrine in *State ex rel. Judson* v. *County Commissioners,* 68 Conn. 16, 23, 35 Atl. 801; *State* v. *Faatz,* 83 Conn. 300, 305, 76 Atl. 295; *State* v. *Penner,* 85 Conn. 481, 484, 83 Atl. 625, in which the earlier cases upon the subject are collected and cited. See also *Chamberlain* v. *Bridgeport,* 88 Conn. 480, 490, 91 Atl. 380. That the occurrences in connection with the legislative committee are contained in an agreed statement of facts does not render them in any way more entitled to consideration than if found by the trial court after a hearing.

It is contended by the plaintiff that the specifying of Warrenite-Bitulithic pavement as a surfacing material as applied in the case of the Blakeslee contract rendered nugatory the provision of the Act which provides for the letting of the contract to the lowest

responsible bidder, taken in connection with the amount of the next lowest bid made by the Silliman & Godfrey Company. As appears from the stipulated facts, the Blakeslee bid as itemized was for laying pavement composed of base and surfacing. The Blakeslee bid for surfacing with the specified patent material was itemized at $101,328.80, while the Silliman & Godfrey bid for surfacing with sheet asphalt was itemized at $74,344.50, a saving, if the latter material had been used, of $26,984.30, yet, since the work of constructing the specified and necessary base was itemized at a much lower sum than the Silliman & Godfrey bid, the combined Blakeslee bid was less than $3,000 lower than the competing bid; and if the Blakeslee bid had been made on the basis of sheet asphalt surfacing, as a proper specification would have permitted, then there would have been a saving of $26,984.30 to the city. This, as we have observed above, brings us back to the third question, as to the right of the city to specify the use of a patented article.

As regards contracts B and C, the plaintiff observes that while all other bidding contractors were under the burden of making all their profit upon a contract out of the laying of the patented material, the Warren Company had their profit assured in the return from their manufactured, patented product, and hence might forego all profit arising from the laying. The force of this claim is not evident, since the latter company had agreed to sell their product to their bidding competitors at a fixed price, and would presumably have made the same profit had one of these competitors secured the contract and paid the Warren Company for the material. This, however, as in the matter of the A contract, brings us back to the consideration of the third question.

The third question involves the right of the city under the Act to restrict the bids on surfacing material to the Warrenite-Bitulithic product. Plaintiff contends that no such right exists under the Act. The Act provides that from the avails of the bond issue two sorts of permanent pavement may be laid, that is, first, concrete throughout, or second, "surfacing material on a concrete, brick, granite block or bituminous concrete base." In the present case the specifications for both classes of work called for the surfacing material to be the Warrenite-Bitulithic composition, and all bidders were put on an equality by reason of the engagement of the Warren Company to sell its product at an established reasonable price and to license the use of all of its patents. It is evident that the Act confided to the city engineer the determination of the sort of pavement to be adopted, provided it conformed to its specific provisions. One course, claimed by the plaintiff to be the only correct one, would have been to have issued to bidders a specification as to surfacing prescribing in general terms the requirements for such work, so that bidders might in their tenders provide for any sort of surfacing claimed to come up to the requirements of the specifications. In that event it would have been necessary for the mayor and city engineer to take into consideration the kind of surfacing proposed in determining whether the same accorded with the needs of the city as set forth in the specifications; in other words, the city authorities had to determine at one time or another the kind of surfacing to be adopted. The other method of making this determination would have been to determine in advance the kind of surfacing most adapted to the needs of the city's highways which were to be put in condition, and to specify that kind. This latter method was the one employed, and we think that such action

was within a proper construction of the terms of the Act. The question of adaptability of a proposed surfacing for use on the streets was bound to arise, unless the only question properly to be considered was one of price on the bid of a responsible contractor. If, indeed, this latter question were the only one to be determined, the result might be a number of cheaply constructed but undesirable streets, evidently something far different from what is contemplated in the Act. We think it is clear that the city engineer had a right to designate in advance the kind of surfacing required, provided, as is the case before us, equality among bidders was assured by a uniform price for the material to be used. The words of the Act are "surfacing material on a concrete" base. What this surfacing material is to be is necessarily to be determined in some way by the proper city authority, and we deem it clear that the determination might be made as well before the issuance of specifications as afterward. If the Act obliged the municipal authorities to open the bidding to any kind of pavement, and to decide among the competitors in favor of the lowest bidder, the result would be that the municipality would obtain the pavement of least cost, and in all probability of least value. Between the numbers of different pavements in the market there should be some agency for selection, and the most natural agency is the officials of the municipality, who should have the greatest interest in making the proper selection, and are directly responsible for the proper performance of their official duty to the people of the municipality who have to pay the price of their poor judgment. It is to be noted in this connection that the specification gives the city the right to reject any and all bids. In *Johnston* v. *Hartford,* 96 Conn. 143, 158, 113 Atl. 273, it was contended that the street commissioners of the city of Hartford did not

Litchfield *v.* Bridgeport.

conform to an order of the common council of that city in advertising for bids for paving, which prescribed an advertisement for bids. In this case we said: "The order was to advertise for bids for paving 'with asphalt, concrete, bitulithic, or other bituminous paving.' That meant that the board might advertise, as it did, for bids for asphalt or any one or more of the kinds of pavement mentioned. An option was given. Moreover, the board has, as we have seen, the power granted by special law to select the kind of pavement it deemed proper. 12 Special Laws, p. 617. In advertising for bids for asphalt only, the board complied with the order and acted within its independent powers." The reasoning of this case is applicable in the instant case. But the stress of plaintiff's argument is that the inclusion of a patented article in the requirements of a specification is obnoxious to the rule of competitive bidding even where the article in question is open to purchase by bidders on equal terms. The great weight of authority seems otherwise. The defendants claim the correct doctrine to be as follows: "If, then, the statute be construed as requiring, by implication, competitive bidding for the pavement to be laid, the great weight of authority establishes the proposition that the selection of a patented article with a license agreement enabling all who may desire to bid upon the proposed work to secure the patented article at a set price, in no sense contravenes the requirement of the statute." The doctrine laid down in the above quotation is that sustained by the weight of authority. *Bye* v. *Atlantic City,* 73 N. J. L. 402, 64 Atl. 1056; *Warren Brothers Co.* v. *City of New York,* 190 N. Y. 297, 83 N. E. 59; *Johns* v. *Pendleton,* 66 Ore. 182, 133 Pac. 817, 134 id. 312; *Baltimore* v. *Flack,* 104 Md. 107, 64 Atl. 702; *Kilvington* v. *City of Superior,* 83 Wis. 222, 53 N. W. 487, 18 L. R. A. 45 and note; *Saunders*

v. *Iowa City,* 134 Iowa, 132, 111 N. W. 529, 9 L. R. A. (N. S.) 392; *Hobart* v. *Detroit,* 17 Mich. 246, 97 Amer. Dec. 185; *Allen* v. *Milwaukee,* 128 Wis. 678, 106 N. W. 1099, 5 L. R. A. (N. S.) 680 and note; 2 Elliott on Roads & Streets (3d Ed.) §§ 710-712; 3 McQuillin on Municipal Corporations, § 1197; 2 Dillon on Municipal Corporations, § 803 and notes. The notes in the annotated cases and in the text-books above cited contain abundant supporting authority.

The fourth question propounded for advice is concerned with the right of the city through its designated officials to expend the avails of the bond issue upon other streets than those named in the Act without the permanent pavement laid on the base therein specifically described. It is the contention of the plaintiff that not only the designated streets, but all streets selected for pavement must have such a base; on the other hand, the defendants claim that apart from the streets particularly named, the city engineer has the power not only to designate the additional streets to be paved, but also to determine the sort of pavement to be laid, both as respects base and surfacing. We regard the claim of the plaintiff as being in accord with the proper construction of the Act.

It will be noted, in the first place, that certain streets are named and pavement of a certain sort prescribed for them or such portions of them as the city may recommend. The sort of pavement prescribed for these streets is unquestionably of a nature and quality properly called permanent. In addition to these streets or parts of these streets, the proceeds of the bond issue may be used "for the paving of such other streets with such pavement as the city engineer may recommend." Concededly this clause is not free from ambiguity, and its effect must be determined by consideration of its relation to the context of the Act.

The Act confers upon the city engineer certain discretion. He has this discretion with regard to the named streets as to whether the whole extent of each of them, or only certain parts, shall be improved by the laying of pavement of a permanent type, and also what other streets shall be paved. The point at issue is whether the discretion as to the other streets extends to the type of pavement. It must be conceded that the word "such" when used before pavement may be equivalent to "said" and refer back to the type of pavement previously described in the section of the Act with which we are concerned, or it is susceptible of a construction whereby it may be equivalent to the words "the sort of" or some like expression. The plaintiff claims that the whole matter may be cleared up by a transposition of words, whereby the clause may be read "and for the pavement of such other streets as the city engineer may recommend, with such pavement," and as we regard it, the same result would be attained by placing a comma before and after the phrase "with such pavement." The defendants claim that the plain purpose of the Act can only be subserved if some such change is made in the wording of this phrase as to add the word "and" between the words "such other streets" and the words "with such pavement"; or again, by leaving out the word "such" before "other," or by substituting "any" for "such" before the words "other streets." The phrase might, upon good authority, be treated in this way, if carrying out the plain intent of the Act as a whole clearly indicates the necessity of such procedure. Resort to such methods is not favored, however, unless necessary to make legislation conform to a very evident intent. If, now, we turn to the section now being considered, we find that the city engineer has power to recommend "such portions" of the enumerated

streets for paving with the designated permanent paving. His recommendation here relates to streets, that is, parts of streets, and if we go on to the next instance in which he is to recommend, we find it again concerned with streets, with the designation of additional streets to be paved as he "may recommend."

Then it is not to be forgotten that the Act provides for the use of the avails of the bond issue for permanent paving, and follows with a definition of paving which certainly is entitled to be called permanent. The claim of the defendants is that the Warrenite surfacing material may, upon the recommendation of the city engineer, be spread upon a base or foundation already existing—it may be of macadam or some other light road construction, or it may be merely upon a gravel road. Such treatment of roads, though undoubtedly it might result in a much improved and fairly wearable surface upon some streets, hardly measures up to the standard of permanent pavement, and would seem to be more properly called ordinary maintenance and repair of existing streets. That the city sought and obtained from the General Assembly a bond issue to finance operations of the kind proposed in contracts B and C, and under the guise of permanent pavements to set on foot a most comprehensive system of road repair, is certainly not evident from the text of the Act nor the surrounding circumstances set forth in the stipulated facts. Yet counsel for defendants insist that from these facts no reasonable inference may be drawn, except one which allows the city engineer to set on foot road operations of as much or little permanency as he may choose, running from paving of the most permanent character known to the merest top-dressing of existing streets. Their argument is that the obvious purpose of the General Assembly was to assure the most durable pavement upon certain desig-

nated streets, and when that was done it followed as a necessary corollary that as to any other streets the city engineer had a free hand as to pavement, as regards base and surfacing. It is first urged that after these enumerated streets are cared for in the way provided by the Act, to lay the same heavy and permanent quality of paving on other streets would involve wholly unreasonable extravagance, and that one third to one half of the avails of the sale of bonds must be used for work not called for by traffic conditions in the city. This argument assumes that there are no other streets in the municipality requiring permanent paving with the same base as in the streets named, but the record does not so state; it further assumes that there must be an immediate expenditure of $500,000 in pavement work under the provisions of the Act. Such is not the case. The Act itself, in providing for securing funds for permanent paving, provides for a bond issue of a sum not exceeding $500,000. There is no obligation to issue bonds to the whole amount at once unless presently required. Then again there is no obligation resting upon the city to use at once the whole amount derived from the bond issue. Bonds for the amount approximately to be required for pavement of the kind expressly provided in the Act might be sold, and the remainder held unsold in the treasury to be used for permanent paving in the future. Money does not necessarily burn in the treasury of a city, as in the pocket of a spendthrift. The ordinary maintenance of the streets of the city with proper surfacing would seem properly a charge upon its regular annual budget raised in the ordinary way by current taxation. We conclude that the position of the plaintiff upon the point now considered is correct, both as arising from the text of the Act, and from its consideration in connection with the facts de-

veloped in the stipulation. But in addition to this, we have the resolution of the common council to issue the bonds under the authority of the Act, as the same appears as Exhibit C of the agreed statement of facts and as above set forth. The vote, in the first place, recites the Act of the General Assembly, and then resolves, in pursuance thereof, to issue "Pavement Bonds," the avails of which are to be applied "for the purpose of laying permanent pavement of concrete or surfacing material on a concrete, brick, granite block or bituminous concrete base on the streets in the above described Act." It therefore plainly appears that whatever streets are contemplated by the expression "in the above described Act," they are to be paved with the material and in the manner designated in the resolution. The bonds could not have been legally issued for a pavement other than that prescribed in the resolution of the council. The avails of the bonds are therefore appropriated for this specific purpose and cannot be diverted to any other purpose. This is well recognized law. *Chatfield Co.* v. *Waterbury,* 88 Conn. 322, 329, 330, 91 Atl. 436; *Dellaripa's Appeal,* 88 Conn. 565, 92 Atl. 116. It follows that so far as contracts B and C are concerned, no warrant exists for the use of any of the proceeds of the bond issue, in paying the amounts required by their provisions. This would be so even if the broad construction of the Act by itself, contended for by counsel for defendants, were tenable as regards streets covered thereby, since the vote issuing the bonds provides for the use of the avails from their sale only in laying the kind of paving described in the resolution of the council. We may add that this vote has value as a contemporary and official construction of the Act.

The questions propounded should be answered as

follows:  The first question, Yes; the second question, Yes; the third question, Yes; the fourth question, No.

The Superior Court is advised to render judgment in accordance with this opinion.

No costs in this court will be taxed in favor of any of the parties.

In this opinion the other judges concurred.