WALTER B. DOSTMANN ET AL. *v.* ZONING BOARD OF
APPEALS OF THE TOWN OF GLASTONBURY ET AL.

INGLIS, C. J., BALDWIN, O'SULLIVAN, WYNNE and DALY, JS.

Argued February 9—decided March 27, 1956

*Edward Olson, Jr.,* with whom were *Joseph Sarcia* and, on the brief, *Morris S. Falk,* for the appellants (plaintiffs).

*Walter F. Foley,* for the appellee (defendant Leitao).

*Edward C. Wynne,* for the appellee (named defendant).

BALDWIN, J. This appeal presents a question of the interpretation of provisions of the building zone regulations of the town of Glastonbury. The facts are as follows: The defendant Jack Leitao, who holds an option to purchase a parcel of land located in an industrial zone in Glastonbury, applied to the building inspector for a permit to construct on this parcel an outdoor drive-in theater. The inspector refused the permit and Leitao appealed to the defendant board of appeals. The board ordered the permit issued on the ground that a theater was a permitted use under article 3, § 7, of the regulations. The plaintiffs, aggrieved property owners, appealed to the Court of Common Pleas. The court dismissed the appeal, and from that judgment the plaintiffs have appealed to this court.

Article 3, § 7, of the regulations (1954) reads as follows: "INDUSTRIAL ZONE A. Permitted Uses. Uses permitted in Business zone . . . . [Specific uses of an industrial nature are then listed.] Any other industry or business with characteristics similar to the above uses, which is not hazardous or offensive or detrimental to the neighborhood because of odors, fumes, dust, smoke, noise, vibration or other objectionable characteristics, when authorized by the Board of Appeals. In determining the appropriate-

ness of the use, the Board of Appeals shall consider among other things the size of the plant, the number of employees, the incidents of the business or process employed and shall grant all permits subject to such conditions and safeguards as will carry out the purpose of these regulations...."

Article 3, § 6, is entitled "General Business Zone" and includes among permitted uses "[t]heatre and place of assembly, recreation and amusement, except roller coasters, carousels and penny arcades." The defendants contend that this language is plain and unambiguous and that therefore a theater is clearly allowed in an industrial zone. The plaintiffs, however, point to article 6, § 5, which deals with the powers of the board of appeals. This section reads: "A. The Board of Appeals shall have the following powers:... 2. Decide special questions as authorized in these regulations and hear and decide requests for special exceptions to the provisions herein as follows: ... e. Permit additional uses in the Industrial Zone as specified in Article III, Section 6." As has been previously stated, article 3, § 6, refers to uses in a general business zone. The plaintiffs claim that while under article 3, § 7, business uses are permitted in an industrial zone, they require the approval of the board of appeals acting under article 6, § 5(A)(2)(e). The plaintiffs argue that an industrial zone is not a catchall for uses permitted in other zones and that the intention of the regulations is to preserve industrial zones primarily for industrial uses and to allow business uses therein only subject to the approval of the board of appeals. In short, they claim that a business use in an industrial zone is permitted as an exception. See *Mitchell Land Co. v. Planning & Zoning Board of Appeals,* 140 Conn. 527, 531, 102 A.2d 316. They concede that §§ 6 and 7

of article 3, standing alone, appear to be unambiguous, but they argue that these sections are only two of the many provisions of the regulations, which must be regarded as an entire piece of legislation. In construing legislation, courts are required to reconcile apparently inconsistent provisions so far as that can be done. *State ex rel. Chatlos* v. *Rowland,* 131 Conn. 261, 265, 38 A.2d 785; *Hutchison* v. *Board of Zoning Appeals,* 140 Conn. 381, 385, 100 A.2d 839. Ordinarily, no legislative provision can be regarded as superfluous. *State* v. *Cambria,* 137 Conn. 604, 610, 80 A.2d 516; *Hurlbutt* v. *Hatheway,* 139 Conn. 258, 262, 93 A.2d 161.

It has been the general practice in zoning in the past to admit to districts of less restricted uses those uses permitted in the more restricted ones. *Corthouts* v. *Newington,* 140 Conn. 284, 287, 92 A.2d 112; 1 Yokley, Zoning Law & Practice (2d Ed.) §§ 47, 49. This, so to speak, is zoning in one direction only. A study of the Glastonbury regulations reveals, as claimed by the plaintiffs, an effort to alter this policy. We cannot ignore article 6, § 5(A)(2)(e), completely, as urged by the defendants. On the other hand, we do not ascribe to this section the legislative intention claimed by the plaintiffs, because their claim overlooks an inconsistency which will appear from subsequent discussion.

There is a rule of statutory construction that when an ambiguity exists, manifest legislative intention must prevail over the literal meaning of the words used. *State ex rel. Rourke* v. *Barbieri,* 139 Conn. 203, 207, 91 A.2d 773; *Brown ex rel. Gray* v. *Quintilian,* 121 Conn. 300, 304, 184 A. 382; *Litchfield* v. *Bridgeport,* 103 Conn. 565, 579, 131 A. 560; *Brown's Appeal,* 72 Conn. 148, 150, 44 A. 22; *Rawson* v. *State,* 19 Conn. 292, 299. "Every statute ought

to be construed according to the intent of the legislature; and therefore, if a corporation were intended, though it be misnamed, it is sufficient. 10 Co. 57.*b.*—Every statute ought to be construed according to the *intent,* and not according to the *letter.* Plowd. 353, 363. So the judges expound a case within the *mischief* and *cause* of an act to be within the *equity* of the statute, though it be not within the words. Co. Litt. 24. So a case out of the mischief intended to be remedied, though embraced by the words, shall be construed out of the purview. 2 Co. Inst. 386.—The statute of Gloucester, penal in its nature, which gave treble damages, against a tenant *for years,* extends, by equity, to a tenant for *half a year.* Plowd. 178. Where remedy for waste is given against a *lessee,* it extends to a *devise for life* or *years.* Plowd. 10. A statute in relation to *administrators,* is extended to *executors.* Plowd. 467." *Richmondville Mfg. Co.* v. *Prall,* 9 Conn. 487, 495; *Bridgeport* v. *Hubbell,* 5 Conn. 237, 244.

Article 3, § 7, which deals with uses in an industrial zone, permits in such a zone "[a]ny other industry or business with characteristics similar to the [uses specified for an industrial zone], when authorized by the Board of Appeals." It goes on to direct the board as to what matters it shall consider and what safeguards it shall require in granting such an authorization. It is obvious that these are the "additional uses" referred to in article 6, § 5(A)(2)(e), which, as we have seen, empowers the board of appeals to "[p]ermit additional uses in the Industrial Zone as specified in Article III, Section 6." If the reference read "Article III, Section 7," it would be literally accurate and would carry out the manifest intent. If we consider the phrase "in Article III, Section 6" surplusage, the same result is

accomplished. In other words, the uses permitted in an industrial zone are, first, those permitted in a business zone; second, the industrial uses listed in article 3, § 7; and third, such other uses, similar to the industrial and business uses set forth, as the board of appeals may permit under the conditions and safeguards stated in article 3, § 7.

An analogous situation is presented under article 6, § 5(A)(2)(d), which empowers the board of appeals to permit, pursuant to article 3, § 3(C), a multifamily dwelling in a residence zone A as a special exception, subject to certain conditions. The trial court was correct in dismissing the appeal.

There is no error.

In this opinion the other judges concurred.