MARY SPRING *v.* PETER L. CONSTANTINO

HOUSE, C. J., LOISELLE, MACDONALD, BOGDANSKI and LONGO, Js.

Argued January 10—decision released June 10, 1975

*Henry D. Marcus,* with whom, on the brief, was *Frank B. Cochran,* for the appellant (plaintiff).

*Barney Lapp,* assistant attorney general, with whom, on the brief, were *Carl R. Ajello,* attorney general, and *John G. Haines,* assistant attorney general, for the appellee (defendant).

LOISELLE, J. The defendant is an attorney at law. The plaintiff, his client, whom he represented in a Circuit Court criminal proceeding, brought this action for malpractice, alleging in her complaint that the defendant was negligent in disclosing to the court his belief that the plaintiff was insane. It is further alleged that the court thereupon set bail and ordered the plaintiff placed in a mental institution and that the defendant negligently failed to advise the plaintiff of bail procedures whereby her release could be secured. For these alleged actions and their alleged consequences, the plaintiff sought damages. At the time the present action was commenced and at the time of the occurrences pleaded in the complaint, the defendant was a public defender in the Circuit Court and had been appointed to defend the plaintiff. The attorney general entered a special appearance in behalf of the defendant and filed a plea in abatement alleging immunity from suit. The plea was sustained, and the court dismissed the action. The plaintiff has appealed from that judgment.

The issue to be decided on this appeal, whether an attorney occupying the position of public defender and assigned to represent an indigent defendant enjoys immunity from liability for professional malpractice, is one of first impression. Three grounds have been advanced by the state for the public defender's immunity: judicial immunity,

common-law sovereign immunity which extends to public officials, and the statutory immunity of public officers and state employees.

The state argues that the doctrine of judicial immunity, long recognized in this state; *Phelps* v. *Sill,* 1 Day 315, 329; should be extended to public defenders on the ground that the policy supporting immunity for judges and officers exercising a judicial function is applicable to the public defender. It is pointed out that the immunity rule is designed to promote "principled and fearless decision-making" by removing a judge's "fear that unsatisfied litigants may hound him with litigation charging malice or corruption"; *Pierson* v. *Ray,* 386 U.S. 547, 554, 87 S. Ct. 1213, 18 L. Ed. 2d 288; and that this policy has been applied in extending immunity to a prosecuting attorney; *Fanale* v. *Sheehy,* 385 F.2d 866, 868 (2d Cir.); for acts done in "his official capacity" on grounds that "his office is vested with a vast quantum of discretion which is necessary for the vindication of the public interest. In this respect, it is imperative that he enjoy the same freedom and independence of action as that which is accorded members of the bench." *Bauers* v. *Heisel,* 361 F.2d 581, 589–90 (3d Cir.), cert. denied, 386 U.S. 1021, 87 S. Ct. 1367, 18 L. Ed. 2d 457. "The key to the immunity . . . held to be protective to the prosecuting attorney is that the acts, alleged to have been wrongful, were committed by the officer in the performance of an integral part of the judicial process." *Robichaud* v. *Ronan,* 351 F.2d 533, 536 (9th Cir.); see also *Hilliard* v. *Williams,* 465 F.2d 1212, 1217 (6th Cir.) and cases cited therein on the qualified nature of a prosecuting attorney's immunity from liability. The state's argument is

that a public defender is appointed by the judiciary[1] to a judicial office and that in performing his functions he is, as is a state's attorney or prosecutor, "in the performance of an integral part of the judicial process."

This argument sweeps too broadly for it encompasses any privately retained attorney who is representing a criminal defendant. In this state, attorneys admitted to practice are all officers of the court; *Heiberger* v. *Clark,* 148 Conn. 177, 186, 169 A.2d 652; they are all, when they undertake a criminal case, "in the performance of an integral part of the judicial process"—the defense of the accused and the protection of the innocent. But they are in no sense judicial officers. *Yudkin* v. *Gates,* 60 Conn. 426, 429, 22 A. 776.

Concededly, there is a public interest aspect to the public defender system in that it functions to fulfill the constitutional requirement that indigents be ensured competent representation,[2] but a public

---

[1] Under General Statutes §§ 54-80—54-81b (effective at the time of this action) the public defender system applied to every court in the state having criminal jurisdiction, and the judges of the Superior Court and the Circuit Court were respectively authorized to appoint as many assistant public defenders as they determined necessary. In addition, §§ 54-81 and 54-81a expressly authorized the appointment of counsel to serve, at state expense, as special public defenders when, for any reason, for example, a conflict of interest between two accused, there was any real question of the propriety or effectiveness of the public defender's acting for an accused. General Statutes §§ 54-80 through 54-81b have been repealed by 1974 Public Acts, No. 74-317. See chapter 887 of the General Statutes (Rev. to 1975), entitled "Public Defender Services," §§ 51-289—51-300.

[2] Article first, § 8 of the Connecticut constitution reads: "In all criminal prosecutions, the accused shall have a right to be heard by himself and by counsel . . . ." That right was secured to criminal defendants in this state long before the mandate of *Gideon* v. *Wainwright,* 372 U.S. 335, 83 S. Ct. 792, 9 L. Ed. 2d 799, for the "roots

defender, unlike a state's attorney who is a "representative of the state"; *State* v. *Zimnaruk,* 128 Conn. 124, 128, 20 A.2d 613; and who is under a duty to see that impartial justice is done to the accused as well as to the state; *State* v. *Moynahan,* 164 Conn. 560, 568, 325 A.2d 199; upon assignment to an indigent client is the representative of that client; see *Merwin* v. *Richardson,* 52 Conn. 223, 234; his role is that of an adversary and his function does not differ from that of a privately retained attorney. See *State* v. *Jackson,* 162 Conn. 440, 294 A.2d 517, cert. denied, 409 U.S. 870, 93 S. Ct. 198, 34 L. Ed. 2d 121. The function of the public defender or of any other attorney in representing a defendant does not afford a basis upon which the cloak of judicial immunity may be extended. Nor does the policy behind the doctrine of judicial immunity require that it be applied to a public defender, who is like any other attorney whose duties as an officer of the court and to an individual client and "whose principled and fearless" conduct of the defense are not deterred by the prospect of liability. But see *John* v. *Hurt,* 489 F.2d 786 (7th Cir.); *Brown* v. *Joseph,* 463 F.2d 1046 (3d Cir.), cert. denied, 412 U.S. 950, 93 S. Ct. 3015, 37 L. Ed. 2d 1003.

It is also argued that the common-law doctrine of sovereign immunity which extends to public officials applies in this action and that, unless the state has

of the Connecticut public defender system may be said to go back at least as far as 1872." Mars, "Connecticut Public Defenders," 33 Conn. B.J. 297. For a history of the public defender system see *State* v. *Hudson,* 154 Conn. 631, 635, 228 A.2d 132 ("This state was the first to adopt the public defender system. Public Acts 1917, c. 225"); Wilbourne, "The Developing Right to Counsel: Its Impact on the Connecticut Public Defender System," 39 Conn. B.J. 221, 225–35; Mars, loc. cit.

authorized or consented to suit, the court is without jurisdiction to entertain the suit or to render judgment binding on the state. The doctrine of sovereign immunity is well established in this state. *Simmons* v. *Parizek,* 158 Conn. 304, 306, 259 A.2d 642; *Anderson* v. *Argraves,* 146 Conn. 316, 319, 150 A.2d 295; *Somers* v. *Hill,* 143 Conn. 476, 479, 123 A.2d 468. Although the present action was brought against the defendant in his personal capacity, the state is correct in asserting that "[t]he fact that the state is not named as a defendant does not conclusively establish that the action is not within the principle which prohibits actions against the sovereign without its consent. . . . The vital test is to be found in the essential nature and effect of the proceeding." *Somers* v. *Hill,* supra, 479. The *Somers* case (p. 480) laid down the following criteria for determining whether "the suit is, in effect, one against the state and cannot be maintained without its consent": (1) a state official has been sued; (2) the suit concerns some matter in which that official represents the state; (3) the state is the real party against whom relief is sought; and (4) the judgment, though nominally against the official, will operate to control the activities of the state or subject it to liability. It is questionable whether any of these elements exist in the present action, but this need not be decided because the first element— that a state official has been sued—is not satisfied. A public defender in representing an indigent is not a public official as that term has been defined by this court. The essential characteristics of a "public office" are (1) an authority conferred by law, (2) a fixed tenure of office, and (3) the power to exercise some portion of the sovereign functions of government. *Kelly* v. *Bridgeport,* 111 Conn. 667, 671,

151 A. 268; Mechem, Public Officers § 1. A key element of this test is that the "officer" is carrying out a sovereign function. Even though the state must ensure that indigents are represented by competent counsel, it can hardly be argued that the actual conduct of the defense of an individual is a sovereign or governmental act. The principle that the state cannot function both as prosecutor and defender is so deeply rooted in our system of justice as to require no citation. The public defender when he represents his client is not performing a sovereign function and is therefore not a public or state official to whom the doctrine of sovereign immunity applies.

The third ground of immunity raised by the state is § 4-165 of the General Statutes which provides that "[n]o state officer or employee shall be personally liable for damage or injury, not wanton or wilful, caused in the performance of his duties and within the scope of his employment. Any person having a complaint for such damage or injury shall present it as a claim against the state" under the provisions of chapter 53, §§ 4-141 to 4-165 of the General Statutes. General Statutes § 4-141 defines state officers and employees as including "every person elected or appointed to or employed in any office, position or post in the state government, whatever his title, classification or function and whether he serves with or without remuneration or compensation." With the passage of chapter 53, the General Assembly established a mechanism by which to resolve claims against the state:[3] "There shall be a commission on claims which shall hear

---

[3] Chapter 53 was passed in 1959 after the constitution was amended as follows: "Claims against the state shall be resolved in such manner as may be provided by law." Conn. Const., art. eleventh, § 4.

and determine all claims against the state except: . . . [the exceptions are omitted since they are not relevant here]." § 4-142. "Claim" under chapter 53 means a petition for the payment or refund of money by the state or for permission to sue the state. § 4-141. "When the commission deems it just and equitable, it may authorize suit against the state on any claim for more than twenty-five hundred dollars which, in the opinion of the commission, presents an issue of law or fact under which the state, were it a private person, could be liable. . . . The rights and liability of the state in each such action shall be coextensive with and shall equal the rights and liability of private persons in like circumstances." § 4-160. Within that statutory framework, where the state is liable for the acts of its employees under § 4-160, the employees are immune from suit under § 4-165. Stated differently, the statute, while affording a person the potential right to sue the state, denies that person his right of action against the state's employees. Chapter 53, then, derogates the sovereign immunity of the state, extends an immunity not previously enjoyed by state employees, and thereby abrogates the previously existing rights of persons to seek redress against those employees. The provisions of chapter 53 are subject to strict construction upon the principle that statutes in derogation of private rights should be strictly construed; *Postemski* v. *Watrous,* 151 Conn. 183, 187, 195 A.2d 425; *Torrington* v. *Messenger,* 74 Conn. 321, 325, 50 A. 873; and upon the principle that "[s]tatutes in derogation of sovereignty should be strictly construed in favor of the state, so that its sovereignty may be upheld and not narrowed or destroyed . . . . Among the statutes in derogation of sovereignty

and subject to the rule requiring strict construction in favor of the state are those allowing suits against the state or its representative, creating a claim against the state or waiving its immunity from liability." 82 C.J.S. 936, Statutes, § 391. See *Murphy* v. *Ives,* 151 Conn. 259, 196 A.2d 596; 2A Sutherland, Statutory Construction (4th Ed.) § 58.04.

The manifest legislative intent expressed by chapter 53 is that an employee is immune where and because the state may be sued, and that the state may be sued in instances where a private person would be liable. See § 4-160 (a). This would include the vicarious liability of a private person for the acts of his employees arising out of the scope of their employment under the doctrine of agency or respondeat superior.[4]

The intent to limit the liability of the state to that of a private person is inconsistent with the broad definition of "employees" in § 4-141, which

---

[4] The legislative history of chapter 53 buttresses the conclusion that the grant of immunity to employees and the imposition of liability on the state was not intended to extend beyond the limits of a private person's liability. It was House Bill 4003 of the 1959 session of the General Assembly that ultimately became chapter 53 of the General Statutes. When the bill was reported to the Committee on Appropriations on May 20, 1959, the member of the council who reported it stated in part: "[A]t the direction of the General Assembly, the Legislative Council considered the question of claims against state officers and employees arising from their employment. After studying several alternatives, the Council recommends that the present tort liability attaching to state employment be extinguished and that any person having a claim against a state employee be directed to present it to the Commission as a claim against the state. Were the state liable in law for its torts, it would be liable in the same fashion and to the extent as its employees for damage or injury caused by such employees in the course and within the scope of their employment." Hearings before the Joint Standing

would include even the status of independent contractor,[5] for whose torts a private employer, as a general rule, is not liable. See *Wright* v. *Coe & Anderson, Inc.,* 156 Conn. 145, 151, 239 A.2d 493; *Lawrence* v. *Shipman,* 39 Conn. 586, 588; Restatement (Second), 3 Torts §§ 409–29; Prosser, Torts (4th Ed.) § 71. In construing legislation, courts are required to reconcile apparently inconsistent provisions so far as that can be done. *Dostmann* v. *Zoning Board of Appeals,* 143 Conn. 297, 300, 122 A.2d 19. There is a rule of statutory construction that when an ambiguity exists, manifest legislative intention must prevail over the literal meaning of the words used. *Dostmann* v. *Zoning Board of Appeals,* supra, 300–301. As indicated above, the manifest intent of the statute is to limit the liability of the state to acts of its employees arising out of the employer-employee relationship.

Thus, the pivotal issue to be determined for the purpose of this appeal is the nature of the relation-

Committee on Appropriations, Pt. 3, 1959 Sess., pp. 919, 922. The court takes judicial notice of this transcript of a committee hearing. Although "[w]e have uniformly held that occurrences at such hearings are not admissible as a means of interpreting a legislative act, any more than are the private reasons of individual members for supporting it; *Litchfield* v. *Bridgeport,* 103 Conn. 565, 573, 131 A. 560; *Peck* v. *Fanion,* 124 Conn. 549, 553, 1 A.2d 143 . . . ; [w]here however, a report of a special commission or committee to the governor or General Assembly is presented to it, we consider it upon the assumption that its contents are generally known to the members of that body, at least in determining the general intent of the legislature. *Institute of Living* v. *Hartford* . . . [133 Conn. 258, 265, 50 A.2d 822]." *State ex rel. Pettigrew* v. *Thompson,* 135 Conn. 228, 233–34, 63 A.2d 154.

[5] This conflict is most glaring in the case of the private attorney appointed to serve as special public defender. He clearly functions as an independent contractor, but under the broad definition of § 4-141 he would be an employee of the state who would be immune from suit and for whose acts the state could be subject to suit.

ship between the state and the public defender once he has been appointed to represent a particular client, and whether that relationship is an "actionable agency relationship, that is, an agency relationship sufficient to impose liability under modern respondeat superior concepts or under any other theory of agency." *Mitchell* v. *Resto,* 157 Conn. 258, 260, 253 A.2d 25. Specifically, is the public defender, acting in the context of the attorney-client relationship, an employee or servant of the state for whose acts the state, were it a private person, would be vicariously liable?

The legal incidents of the relation between an employer and an employee or independent contractor are well established. *Lassen* v. *Stamford Transit Co.,* 102 Conn. 76, 79–80, 82, 128 A. 117. "In *Alexander* v. *R. A. Sherman's Sons Co.,* 86 Conn. 292, 297, 85 A. 514, we adopted the definition that '[a]n independent contractor is one who, exercising an independent employment, contracts to do a piece of work according to his own methods and without being subject to the control of his employer, except as to the result of his work.' This definition has been amplified in subsequent cases but at no time has the basic principle been altered. See *Francis* v. *Franklin Cafeteria, Inc.,* 123 Conn. 320, 324, 195 A. 198. . . . 'The fundamental distinction between an employee and an independent contractor depends upon the existence or nonexistence of the right to control the means and methods of work.' *Beaverdale Memorial Park, Inc.* v. *Danaher,* 127 Conn. 175, 179, 15 A.2d 17; see *Kaliszewski* v. *Weathermaster Alsco Corporation,* 148 Conn. 624, 628, 173 A.2d 497; *Bourgeois* v. *Cacciapuoti,* 138 Conn. 317, 320–21, 84 A.2d 122; *Norwalk Gaslight*

*Co.* v. *Norwalk,* 63 Conn. 495, 524, 28 A. 32." *Darling* v. *Burrone Bros., Inc.,* 162 Conn. 187, 195–96, 292 A.2d 912.

It is true that a public defender may be told when he is to work and within what area, that he may be assigned to a requisite number of clients and to a particular client,[6] and that he may be required to file reports and undergo training, but these elements of control are indicia of the master-servant relationship and incidents of a public defender's employment which are not within the scope of the attorney-client relationship. A person may be a contractor as to part of his service and a servant as to another part. *Scorpion* v. *American-Republican, Inc.,* 131 Conn. 42, 45, 37 A.2d 802; *Clough* v. *Estate of Malley,* 126 Conn. 379, 382, 11 A.2d 398. The question of status, in the absence of controlling circumstances, is one of fact; *Francis* v. *Franklin Cafeteria, Inc.,* 123 Conn. 320, 324, 195 A. 198; but when the decisive principles are applied to the present parties, it is clear as a matter of law that the status of the public defender, once the attorney-client relationship attaches, is that of an independent contractor rather than that of an employee. See *Darling* v. *Burrone Bros., Inc.,* supra.

The Connecticut public defender system derives its existence from our statutes, but these in no way attempt to control or otherwise influence the professional judgment of a lawyer who acts as a public

---

[6] "Nor can an indigent accused without good reason refuse the services of a public defender and compel the state to engage and compensate counsel of his own choice. *State* v. *Nash,* 149 Conn. 655, 661, 663, 183 A.2d 275, cert. denied, 371 U.S. 868, 83 S. Ct. 130, 9 L. Ed. 2d 104; *State* v. *Taborsky,* 147 Conn. 194, 201, 158 A.2d 239; *State* v. *Reid,* . . . [146 Conn. 227, 235, 149 A.2d 698]." *State* v. *Hudson,* 154 Conn. 631, 637, 228 A.2d 132.

defender. Once assigned, the public defender is free to act in behalf of his client as if he had been employed and retained by the defendant whom he represents. The source of his compensation is different but otherwise the relation of attorney and client is the same when a public defender appears for one accused of crime as would be the relation between privately employed counsel and client. *In re Hough*, 24 Cal. 2d 522, 528–29, 150 P.2d 448. See *Espinoza* v. *Rogers*, 470 F.2d 1174 (10th Cir.) " 'An attorney's allegiance is to his client, not to the person who happens to be paying him for his services.' *Martyn* v. *Donlin*, 151 Conn. 402, 413–14, 198 A.2d 700." *Novella* v. *Hartford Accident & Indemnity Co.*, 163 Conn. 552, 573, 316 A.2d 394. That principle of general application is of particular force herein. The independence of the public defender and his freedom from entanglement with the state is a key constitutional underpinning of the Connecticut public defender system. It would be incongruous to say on the one hand that public defenders are insulated from "improper pressures or influences from any source, political or otherwise . . . to insure that they may fearlessly . . . defend . . . regardless of the public temper of the moment, or the power, influence or connections of the parties involved"; *State* v. *Reid*, 146 Conn. 227, 236, 149 A.2d 698; and on the other hand to give the state the right to interfere with the control of that defense in any greater degree than with the conduct of a defense by a privately employed attorney.⁷ While it need not decide if and to what extent

---

⁷ The judicial branch of government has the inherent power to determine qualifications necessary for the practice of law and to discipline and regulate the conduct of attorneys who are officers of its courts. *Heiberger* v. *Clark*, 148 Conn. 177, 169 A.2d 652. It should be noted in this context that the conduct of attorneys is in

a public defender enjoys immunity as an "employee" of the state, this court must conclude that the immunity conferred and the liability assumed by the state under chapter 53 was not intended to extend to the acts and omissions of a public defender which arise during the course of the attorney-client relationship and over which the state has no right of control.

The defendant public defender in this case enjoys none of the immunities upon which the court below sustained the plea in abatement.

There is error, the judgment is set aside and the case is remanded with direction to overrule the plea to the jurisdiction and then to proceed in accordance with the law.

In this opinion the other judges concurred.

---

part regulated by the Code of Professional Responsibility. The Canons and Disciplinary Rules contained in the Code of Professional Responsibility as adopted by the American Bar Association and as recommended by the House of Delegates of the Connecticut Bar Association for adoption were approved, and the Ethical Considerations were approved in principle, by the judges of the Superior Court effective October 1, 1972. See Practice Book, 1974 Cumulative Supplement, note, p. 1. Disciplinary Rule 6-102, "Limiting Liability to Client," states: "A lawyer shall not attempt to exonerate himself from or limit his liability to his client for his personal malpractice." Ethical Consideration 6-6 states in part: "A lawyer should not seek, by contract or other means, to limit his individual liability to his client for his malpractice. A lawyer who handles the affairs of his client properly has no need to attempt to limit his liability for his professional activities and one who does not handle the affairs of his client properly should not be permitted to do so."