WILLIAM F. SULLIVAN *v.* NORMAN K. MORGAN, SUPERINTENDENT, CONNECTICUT SCHOOL FOR BOYS, ET AL.

ALCORN, C. J., HOUSE, THIM, RYAN and SHEA, Js.

Argued October 14—decided December 23, 1970

*F. Michael Ahern,* assistant attorney general, with whom, on the brief, was *Robert K. Killian,* attorney general, for the appellants (defendants).

*William G. Comiskey,* with whom, on the brief, was *Joseph P. Patrucco,* for the appellee (plaintiff).

HOUSE, J. This appeal arises from the judgment rendered on a retrial of a mandamus action brought by the plaintiff seeking an order that he be reinstated to his former position in the state service, that he be restored to the roster of state employees with full benefits and that the state comptroller be directed to issue an order to the state treasurer for full pay retroactive to July 28, 1958, when his state service was terminated. The decision ordering a retrial is printed under the same title. *Sullivan* v. *Morgan,* 155 Conn. 630, 236 A.2d 906.

The plaintiff became a state employee in 1946 and in 1958 had achieved permanent status as an employee in the classified service, holding the position of occupational supervisor at the Connecticut School for Boys at Meriden. At the request of the superintendent of the school, the state police conducted an investigation of a series of fires at the school, and on April 10, 1958, the plaintiff was picked up by the police for questioning in connection with this investigation. He was interrogated at the state police barracks in Hartford and signed a statement in which he admitted setting fires at the school. He later also orally admitted to the school superintendent that he had started the fires at the school. During the interrogation a police official determined that the plaintiff's demeanor was such as to warrant an examination by a physician, who, after examining the plaintiff, signed a temporary commitment order under which the plaintiff was committed to the Connecticut Valley Hospital at Middletown. Subsequently, on June 4, 1958, after a hearing in the Probate Court for the district of Middletown, the plaintiff was

found to be mentally ill and was committed to the Connecticut Valley Hospital, and a conservator was appointed. He remained committed to the mental hospital until February 3, 1959, and, other than for shock treatment in December, 1958, he was at all times confined to the maximum security ward. No charges against him were ever pressed. He has performed no services at the Connecticut School for Boys since April 10, 1958. From April 10, 1958, until July 28, 1958, while committed to the mental hospital, the plaintiff was retained on the state payroll at full pay until his accrued vacation and sick leave were exhausted and he was dropped from the state payroll. Sometime before July 28, 1958, he wrote to the superintendent and assistant superintendent of the school concerning his employment. Roy McLaughlin, the superintendent, replied under date of August 8, 1958, informing the plaintiff: "I realize that a job placement for you when you leave the hospital is of great concern to you but surely you realize that it would be impossible for you to return to the school. I have done everything I can for you on sick leave for the limit of your bank. I have, also, given you the vacation time which you accrued in 1957 as well as this year through June and the holidays. You have been on the payroll on full pay through July 28 and you were not dropped from the service until that time." On August 12, McLaughlin notified the director of the state personnel department that he had written to the plaintiff to the effect that it would not be possible for him to return to the Connecticut School for Boys and "for the record" stated why he had "taken that stand." His reasons included the mental illness of the plaintiff, the plaintiff's repeated death threats to and annoyance of a woman employed at the Long

Lane School which resulted in three investigations by the F.B.I., and the series of fires at the School for Boys which led to questioning of the plaintiff by the state police. McLaughlin further reported conversations with the superintendent of the Connecticut Valley Hospital, who was of the opinion that the plaintiff was a chronic alcoholic, and with the physician in charge of the plaintiff during his confinement at the hospital, who advised against the plaintiff's return to employment at the School for Boys. His report to the director of personnel concluded with the opinion that the plaintiff was suffering from "a mental condition which became serious toward the end. Mr. Sullivan has never been considered a valuable employee but he has been known as a kind person who got along well with the boys assigned to him and I hope it will never be necessary for me to prefer charges against him."

The plaintiff was released and discharged from the mental hospital on February 3, 1959, and immediately inquired of the president of his state employees' union as to his job status and has ever since pursued efforts to secure reinstatement in his former job at the School for Boys. These efforts included an application to the superintendent of the school, who informed him that he would not be restored to his former employment although the superintendent would attempt to secure another position in the state service for him, an application to the state personnel director, who refused to reinstate him, unsuccessful applications to the public personnel committees of the 1961 and 1963 sessions of the General Assembly, and a hearing before the state personnel appeal board. The state personnel appeal board on October 29, 1963, denied the plaintiff's appeal. Its decision noted that the plaintiff "was dropped from State

service after the expiration of all his rights when he was hospitalized at the Connecticut Valley Hospital. Under the circumstances no formal written notice of termination of employment was required—in fact, Mr. Sullivan was not dismissed from State service. He had no right of appeal to this Board as a result of any dismissal." The present action of mandamus was thereafter instituted by the plaintiff on January 27, 1964.

On the decisive issue on this appeal the trial court concluded that the dropping of the plaintiff from the state payroll constituted a "dismissal" under § 5-56 of the General Statutes, that since no notice was given to the plaintiff as required by the statute he was not legally dismissed, and that "[t]he dismissal of the plaintiff without the required notice was a violation of his legal rights and the plaintiff has a clear legal right to restoration of his employment by the state." On the basis of these conclusions, judgment was rendered for the plaintiff ordering the superintendent of the School for Boys to reinstate the plaintiff to his position as boys' occupational supervisor, ordering the director of state personnel to restore the plaintiff to the roster of state employees with full benefits restored, and ordering the state comptroller to issue an order for full pay to the plaintiff retroactive to July 28, 1958, less (a) three weeks' compensation earned by the plaintiff in other employment; (b) unemployment compensation paid to the plaintiff; (c) social security benefits received by the plaintiff since May 8, 1962, and (d) welfare benefits received by the plaintiff since August 6, 1963. It is from this judgment that the defendants have appealed.

In 1937 the state established a merit system for state employees. Cum. Sup. 1939, §§ 640e–703e. "In

dealing with its own employees the state has broad powers. So far as appears, the plaintiff's employment was for an indefinite time and, apart from the statute, he might have been discharged at any time; *Emerick* v. *Connecticut General Life Ins. Co.,* 120 Conn. 60, 65, 179 A. 335; and except for that statute he had no vested right to continue in his employment. The state, in adopting the merit system law, in effect voluntarily established conditions governing, among other things, the suspension or discharge of its employees, with the purpose of protecting them against unjustified suspension or dismissal. The extent to which such protection should be afforded rested entirely in the discretion of the General Assembly. . . . The merit system statute in effect writes into the contract of each employee the conditions which it embodies." *Turrill* v. *Erskine,* 134 Conn. 16, 21, 54 A.2d 494. We note, in passing, that the Merit System Act has been amended many times and that the 1967 session of the General Assembly enacted a State Personnel Act, General Statutes chapter 67, which superseded chapter 63 of the General Statutes, but it is the statutes and regulations in effect in 1958, when the plaintiff was dropped from state service, which govern the rights which he asserts on this appeal.

At the start we are confronted with a problem of semantics since, in common parlance, the termination of the plaintiff's employment might be termed a dismissal, a discharge, a layoff, or a separation or dropping from state service. We find these terms used variously in the statutes, in the "Regulations Governing Employment in the State Classified Service" in effect in 1958, and in the briefs and arguments of counsel. Each term has a separate connotation, and it appears that the terms "dismissal" and

"layoff" as used in chapter 63 of the General Statutes had special meaning in the context of that chapter.

We find in the governing statutes provisions concerning termination of state employment in three specific instances. The first, § 5-55, applied to resignations and has no application to the circumstances of this case. The second, § 5-56, governed the "dismissal" of state employees "for the good of the service" and applied to a complete severance of employment when an employee was guilty of misconduct. "When an employee is dismissed under this section, the appointing authority must give him written notice. The required terms of the notice define and narrow the meaning of 'good of the service.' It must state whether the discharge was for 'incompetency or other reasons relating to the effective discharge of his duties.' On discharge the employee is immediately removed from the eligible list." *State ex rel. Hartnett* v. *Zeller,* 135 Conn. 438, 441, 65 A.2d 475. Section 14-17 of the "Regulations Governing Employment in the State Classified Service" in effect at the time of the termination of the plaintiff's employment listed sixteen causes for such "dismissal," all but one of which ("[m]oving out of the State") related to misconduct on the part of the employee during the course of his employment. A "dismissal" under the provisions of this statute not only resulted in a separation of the employee from state service but, punitively, the removal of his name from the list of persons eligible for state service. An employee who was dismissed from state service pursuant to the provisions of this statute was permitted an appeal to the state personnel appeal board. General Statutes § 5-60; see also *Hannifan* v. *Sachs,* 150 Conn. 162, 166, 187 A.2d 253.

The third statute applicable in 1958 to termination of the services of a state employee was § 5-57, which applied to "layoffs" and governed situations when an employee was without fault dismissed or laid off for such reasons as lack of work, economy, or insufficient appropriation, all having nothing to do with the manner in which the employee had been performing his duties. The statute provided that such employees should be rehired in the reverse order of layoff for the period they were entitled to remain on the reemployment list.

As we have noted, the trial court concluded that "[t]he dropping of the plaintiff from the state payroll constituted a dismissal under § 5-56 of the General Statutes of Connecticut, and since no notice was given to the plaintiff as required by said statutes, he was not legally dismissed" and "the plaintiff has a clear legal right to restoration of his employment by the state." These conclusions have been attacked and assigned as error by the defendants.

In the light of the record in this case, including the finding of fact by the trial court and the exhibits which were made a part of that finding, we are unable to agree with the conclusion of the court that under the circumstances the dropping of the plaintiff from the state payroll constituted a dismissal under § 5-56. The record does not support this conclusion. No charges within the context of § 5-56 of the General Statutes or of § 14-17 of the applicable "Regulations Governing Employment in the State Classified Service" were ever preferred against the plaintiff. In fact, the superintendent of the School for Boys in notifying the director of personnel that the plaintiff had been dropped from the payroll indicated that he hoped it would never be necessary

to prefer charges against him. The superintendent in informing the plaintiff that he would not be restored to his former employment advised the plaintiff that he would attempt to secure for him another position in the state service. The decision of the state personnel appeal board after the hearing on the plaintiff's application expressly found that the plaintiff was not "dismissed" from state service but was "dropped from State service after the expiration of all his rights when he was hospitalized at the Connecticut Valley Hospital" and that "[i]nasmuch as there were exceptional conditions in Mr. Sullivan's situation, the Personnel Department has made every effort to obtain reemployment for him which was unsuccessful, and pending these efforts, this Board had held up this decision." All of these facts are inconsistent with a dismissal "for the good of the service" under § 5-56 because of misconduct of an employee requiring the immediate removal of his name from the eligible list in the office of the director of personnel.

It clearly appears that the reason the plaintiff was separated from state service was that through no fault of his own or of the state he had become mentally incapable of performing any duties for the state and this mental incapacity was such as to require his indefinite commitment to the Connecticut Valley Hospital, a state agency for the care of the mentally ill. General Statutes § 17-209. Under these circumstances, his separation from state employment did not constitute either a "dismissal" for misconduct under § 5-56 or a "layoff" for economic reasons under § 5-57. Also, in view of the degree of the mental incapacity of the plaintiff and the fact that he was not eligible for retirement, having worked for the state for only twelve years, he was not eligible

or available for either retirement or transfer under § 5-58, which was in effect in 1958 and which provided that when an employee had become mentally incapable of the efficient performance of the duties of his position the appointing authority should recommend to the director his retirement or transfer to less arduous duties.

The very fact of the existence of General Statutes § 5-58 indicates that it was not the legislative intent that a punitive dismissal under § 5-56 should be the only procedure by which a state employee could be removed from his position in the state service. An employee retired under § 5-58 is thereafter no longer employed by the state, and one who is transferred to less arduous duties is thereby removed from his former position and the salary incident thereto. We would, in any event, be reluctant to ascribe to the legislature an intention to require a dismissal under the punitive provisions of § 5-56 in those cases where an employee had become physically or mentally incapable of, or unfit for, the efficient performance of his duties but where retirement or transfer could not be effectuated because of insufficient length of service, the unavailability of a suitable position with less arduous duties or the total mental incapacity of the employee. Nor, since § 5-58 was applicable only to an employee who had become "incapable of or unfit for, the efficient performance of the duties of his position" by reason of physical or mental incapacity or other disability, would we assume that the legislature intended to require a dismissal proceeding under the punitive provisions of § 5-56 to determine whether he was justifiably discharged "for the good of the service." That would be an elaborate superfluity. It is clearly apparent that at the time the plaintiff's employment in his position at the school was

terminated he was totally disabled both physically and mentally from performing any duties there because of his confinement at the Connecticut Valley Hospital, where he was confined for more than six months after his employment was ended. The record discloses that after the plaintiff was released from the hospital both the superintendent of the school and the personnel department unsuccessfully tried to find other suitable work for him. On the other hand, the record is barren of any claim ever made by the plaintiff that any "less arduous" position which he could fill was available. Nor does he seek such employment in this suit, which is limited to a claim that he be reinstated to his former position of boys' occupational supervisor at the Connecticut School for Boys.

On the record of this case and from the statutes and regulations in effect in 1958, we cannot find that the plaintiff was deprived of any right then afforded him by the General Assembly or that, upon the exhaustion of his accrued vacation and sick leave, his separation from state service was unjustified. He was not therefore subsequently entitled, as a matter of right, to reinstatement to his former position in the state service.

There is error, the judgment is set aside and the case is remanded with direction to render judgment for the defendants.

In this opinion ALCORN, C. J., THIM and SHEA, Js., concurred; RYAN, J., dissented.