## SHERRI RUFFIN *v.* DEPARTMENT OF PUBLIC WORKS ET AL.

Memorandum filed March 15, 2006

*Anderson, Reynolds & Lynch, LLP*, for the plaintiff.

*Thadd A. Gnocchi*, assistant attorney general, with whom was *Richard Blumenthal*, attorney general, for the defendants.

KELLER, J. The plaintiff, Sherri Ruffin, brings the present action against four defendants. The first, and named defendant, is the department of public works (public works). The second defendant is the department of administrative services (administrative services). The third is an administrative services manager, Keith Anderson, and the fourth and final defendant is William R. Andrews, a public works human resources administrator. The plaintiff was a classified state employee in the position of assistant accountant in public works' financial management unit for five years before she was

separated from service as a state employee on June 1, 2003. This separation followed her submission of a medical certificate which stated that she would not be able to return to work as an assistant accountant for the financial management unit in the same department. The plaintiff was discharged from state service upon the expiration of a medical leave without position held due to her inability to return to work in the same unit and the state's inability to place her elsewhere in state service.

The plaintiff maintains in the first count of her complaint that the defendants acted in excess of their statutory authority by violating her rights under the State Personnel Act, General Statutes § 5-193 et seq. The plaintiff alleges that her separation from state service violated General Statutes § 5-244 regarding transfer or separation from service because of infirmities due to the defendants' failure to investigate her condition and availability to work and a failure to demonstrate just cause for the application of this statute. The plaintiff also alleges that the defendants did not comply with § 5-244-1 of the Regulations of Connecticut State Agencies regarding separation from state service or transfer to less arduous duties. The plaintiff further alleges that General Statutes § 5-241 was violated due to their failure to place her name on a reemployment list for those laid off from state service and to hire her from that list.

In the second count of the complaint, the plaintiff primarily alleges that she had a property interest in her position and that she was denied the right to due process and a hearing prior to her discharge. The plaintiff also alleges that the defendants' actions "were illegal, ultra vires and/or in excess of [their] authority and were in direct conflict with the State Personnel Act."

The plaintiff, in her claim for relief, asks the court to enter a declaratory judgment essentially declaring

that the defendants' actions in terminating the plaintiff's employment were illegal and in excess of statutory authority, and also asks for injunctive relief in the form of an order to reinstate the plaintiff to her former position as assistant accountant with all back pay and benefits.

The defendants move to dismiss the entire complaint on the grounds of common-law sovereign immunity and statutory immunity pursuant to General Statutes § 4-165. The defendants maintain that sovereign immunity prohibits the exercise of subject matter jurisdiction because there has been no waiver of sovereign immunity and because there is no substantial claim that the defendants either have acted in excess of their statutory authority or violated a constitutional right of the plaintiff. Sovereign immunity, they claim, also bars the plaintiff's claim for money damages. Finally, the defendants claim that the court also lacks subject matter jurisdiction over any claims against Andrews and Anderson if they are sued in their individual rather than official capacities because they are immune from liability pursuant to § 4-165. In support of their motion, the defendants filed a memorandum of law with supporting affidavits and documentation. The plaintiff filed a memorandum of law in objection to the motion to dismiss and states that the motion is factually and legally unwarranted. The plaintiff did not file any affidavits or documentation in support of her position but cites a number of the defendants' exhibits in her opposing memorandum. The defendants filed a reply and a supplemental reply to the plaintiff's memorandum in opposition to the motion to dismiss.

I

STANDARD OF REVIEW

"A motion to dismiss . . . properly attacks the jurisdiction of the court, essentially asserting that the plain-

tiff *cannot* as a matter of law and fact state a cause of action that should be heard by the court." (Emphasis in original; internal quotation marks omitted.) *Gurliacci* v. *Mayer*, 218 Conn. 531, 544, 590 A.2d 914 (1991). "A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction." *Upson* v. *State*, 190 Conn. 622, 624, 461 A.2d 991 (1983). "The issue of subject matter jurisdiction can be raised at any time . . . ." (Internal quotation marks omitted.) *Gagnon* v. *Planning Commission*, 222 Conn. 294, 297, 608 A.2d 1181 (1992). "[O]nce the question of lack of jurisdiction of a court is raised . . . the court must fully resolve it before proceeding further with the case . . . ." (Internal quotation marks omitted.) *Figueroa* v. *C & S Ball Bearing*, 237 Conn. 1, 4, 675 A.2d 845 (1996). "[T]he doctrine of sovereign immunity implicates subject matter jurisdiction and is therefore a basis for granting a motion to dismiss." (Internal quotation marks omitted.) *Federal Deposit Ins. Corp.* v. *Peabody, N.E., Inc.*, 239 Conn. 93, 99, 680 A.2d 1321 (1996).

In deciding a motion to dismiss, a trial court must consider the allegations of the complaint in the light most favorable to the plaintiff. *Antinerella* v. *Rioux*, 229 Conn. 479, 489, 642 A.2d 699 (1994), overruled in part on other grounds by *Miller* v. *Egan*, 265 Conn. 301, 325, 828 A.2d 549 (2003). When a motion to dismiss for lack of jurisdiction is "accompanied by supporting affidavits containing undisputed facts, the court may look to their content for determination of the jurisdictional issue and need not conclusively presume the validity of the allegations of the complaint." *Barde* v. *Board of Trustees*, 207 Conn. 59, 62, 539 A.2d 1000 (1988). "The plaintiff bears the burden of proving subject matter jurisdiction, whenever and however raised." *Fink* v. *Golenbock*, 238 Conn. 183, 199 n.13, 680 A.2d 1243 (1996).

For the following reasons, the motion to dismiss is granted.

## II

## LEGAL ANALYSIS

Under the doctrine of sovereign immunity, the state cannot be sued without its consent, and any suit against a state agent or officer in a matter where the agent or officer represents the state is a suit against the state. *Canning* v. *Lensink*, 221 Conn. 346, 349, 603 A.2d 1155 (1992); *Fetterman* v. *University of Connecticut*, 192 Conn. 539, 550–51, 473 A.2d 1176 (1984); *Sentner* v. *Board of Trustees*, 184 Conn. 339, 342, 439 A.2d 1033 (1981); *Horton* v. *Meskill*, 172 Conn. 615, 623, 376 A.2d 359 (1977).

"In its pristine form, the doctrine of sovereign immunity would exempt the state from suit entirely, because the sovereign could not be sued in its own courts and there can be no legal right as against the authority that makes the law on which the right depends." (Internal quotation marks omitted.) *Doe* v. *Heintz*, 204 Conn. 17, 31, 526 A.2d 1318 (1987). "This absolute bar of actions against the state has been greatly modified both by statutes effectively consenting to suit in some instances as well as by judicial decision in others." (Internal quotation marks omitted.) *Shay* v. *Rossi*, 253 Conn. 134, 168, 749 A.2d 1147 (2000), overruled in part on other grounds by *Miller* v. *Egan*, 265 Conn. 301, 325, 828 A.2d 549 (2003). Consequently, our Supreme Court has recognized three narrow exceptions in which a suit against the state or its officials may be maintained. They are (1) where the state has expressly waived sovereign immunity through the enactment of legislation, either expressly or by force of a necessary implication, and has consented to suit under the specific circumstances prescribed in the legislation; *Martinez* v. *Dept. of Public Safety*, 263 Conn. 74, 85–86, 818 A.2d 758 (2003); *White* v. *Burns*, 213 Conn. 307, 312–13, 567 A.2d 1195 (1990); (2) where an action seeks declaratory or injunctive

relief based on a substantial claim that the state or an official of the state has violated a constitutional right of the plaintiff; *Doe* v. *Heintz*, supra, 31; *Horton* v. *Meskill*, supra, 172 Conn. 624; or (3) where a plaintiff seeks declaratory or injunctive relief based on a substantial claim that a state official has acted in excess of his statutory authority and has thereby violated a right of the plaintiff. *Miller* v. *Egan*, 265 Conn. 301, 314, 828 A.2d 549 (2003); *Doe* v. *Heintz*, supra, 31.

## A

### Statutory Waiver of Sovereign Immunity

The plaintiff cites, in support of her claim of waiver of sovereign immunity, General Statutes §§ 5-267 and 5-268 with respect to count one and the State Employee Relations Act (act), General Statutes § 5-270 et seq., with respect to count two.

General Statutes §§ 5-267 and 5-268 provide no express or implied waiver to civil suit against the state. Section 5-267 requires all officers, appointing authorities and other state employees to conform with the act, and § 5-268 authorizes the state's attorney to prosecute for certain violations of the act and imposes criminal penalties. Neither statute expressly nor impliedly authorizes civil lawsuits against the state.

The act also does not authorize a civil action. It only declares a limited waiver of sovereign immunity in which the state, as an employer, is held subject to collective bargaining. The plaintiff claims that if the state is subject to collective bargaining, then the state is subject to an action for violation of the terms of the act but cites no specific provision or any other authority in support of her position.

"It is well established that statutes in derogation of sovereign immunity should be strictly construed. . . . Where there is any doubt about their meaning or intent

they are given the effect which makes the least rather than the most change in sovereign immunity." (Internal quotation marks omitted.) *Miller* v. *Egan*, supra, 265 Conn. 329. There must be a "precise fit between the narrowly drawn reach of the relevant statute" waiving sovereign immunity and the plaintiff's cause of action in order for there to be jurisdiction over a claim against the state. *Berger, Lehman Associates, Inc.* v. *State*, 178 Conn. 352, 356, 422 A.2d 268 (1979). The scope of the waiver found by the court "must be confined strictly to the extent the statute provides." (Internal quotation marks omitted.) *Mahoney* v. *Lensink*, 213 Conn. 548, 555–56, 569 A.2d 518 (1990). The plaintiff's claim that the aforementioned labor statutes waive sovereign immunity in the present case is without merit.

## B

### The Defendants Acted in Excess of Their Statutory Authority

### 1

### Claim of a Violation of General Statutes § 5-244 Due to the Defendants' Failure to Investigate

The plaintiff alleges that the defendants violated § 5-244 by failing to investigate or obtain an independent medical examination as part of their duty to determine whether this particular statute applied.

Section 5-244 addresses transfer or separation from state service due to disabilities.[1] Nothing in § 5-244 requires an independent evaluation of the plaintiff by the state. The defendants' attempt to transfer the plaintiff to less arduous duties and their later decision to

---

[1] "When an employee has become physically or mentally incapable of, or unfit for, the efficient performance of the duties of his position, by reasons of infirmities due to advanced age or other disability, the appointing authority shall recommend to the Commissioner of Administrative Services that the employee be transferred to less arduous duties or separated from state service in good standing." General Statutes § 5-244.

separate the plaintiff from state service was the result of a certification of disability provided by the plaintiff from her *own* treating psychologist, Norman Andrekis. Andrekis' certification of disability made it clear that the plaintiff could not return to her job at public works' financial management unit. "[The plaintiff] is to return to work in some capacity on [February 27, 2003]; however, she is advised not to return to her current work setting as work in that department is *clinically* not advised." (Emphasis added.) The plaintiff indicated to public works in a letter dated February 26, 2003, that she could return to work "in my same capacity but not in the same department." This was in accord with the position of the plaintiff's doctor. The plaintiff claims in this action that she had no physical or mental limitation upon the expiration of her leave without position held, only a preference not to work in public works' financial management unit. If she had no disability, however, under what authority did she have any protected right to seek a job in a work location other than the one to which she was assigned? The plaintiff's claim is contradicted by her doctor's certificate, for which she vouched, and his statement opined on a medical limitation. If the plaintiff had no disability limitations, the doctor's certificate would have stated that she was able to return to work at her former position, wherever its situs. Section 5-244 does not impose an obligation on the defendants to investigate, only an obligation to transfer to less arduous duties or to separate from service.

The plaintiff's argument that public works did not have reasonable cause to apply § 5-244 is unfounded. The stated restriction that the plaintiff could not return to public works' sole employment location comes from her own doctor, and the plaintiff does not submit any evidence to the contrary. The plaintiff does not claim that her own doctor was wrong.

The plaintiff cites *Wagner* v. *Connecticut Personnel Appeal Board*, 170 Conn. 668, 368 A.2d 20 (1976), but in *Wagner*, our Supreme Court affirmed a judgment of the Court of Common Pleas ordering reinstatement of a state employee who was physically capable of performing her job but was forced to retire against her wishes solely on the basis of her age and length of state service. Id., 675. In the present case, the plaintiff represented that she was no longer clinically able to do her public works job because it was at public works' sole employment location. Section 5-244 mandated the procedures to be followed under these circumstances that ultimately led to the plaintiff's separation from state service, and public works followed them. Accordingly, § 5-244 was not violated.

2

Claim of Failure to Demonstrate Just Cause for Application of General Statutes § 5-244

A just cause standard is not applicable to § 5-244 determinations. The just cause standard is applicable to suspension, demotion or dismissal, as set forth in § 5-240-1a of the Regulations of Connecticut State Agencies. The collective bargaining agreement also utilizes the just cause standard but in the context of suspension, demotion, reprimand or dismissal, not for the type of layoff that the plaintiff alleges in the present case. Furthermore, even if a just cause standard were applicable to § 5-244 determinations, it has been satisfied in the present case. The plaintiff's inability to return to public works' financial management unit, as certified by her doctor, required the application of § 5-244.

3

Claim of Failure by the Defendants to Comply with § 5-244-1 of the Regulations of Connecticut State Agencies

The plaintiff claims in paragraph nineteen of her complaint that public works violated § 5-244-1 of the Regula-

tions of Connecticut State Agencies because it did not comply with the regulation's requirements that it make a recommendation that she be transferred to less arduous duties or separated from state service in writing to the commissioner of administrative services and set out in detail the reasons for the recommendation.[2]

Public works complied with § 5-244-1 (a) of the Regulations of Connecticut State Agencies by writing to administrative services on March 21, 2003, with a recommendation that the plaintiff be transferred to less arduous duties and stating in detail the reasons for the recommendation.[3] "This letter will serve to request a *less arduous duties* search on behalf of our employee, [the plaintiff]. She has been on a medical leave of absence and is unable to return to work at the State Office Building. . . ." (Emphasis in original.) This memorandum follows the substance of Andrekis' medical certificate submitted to public works. Public works also spoke positively of the plaintiff in attempting to find her a transfer.

[2] Section 5-244-1 of the Regulations of Connecticut State Agencies provides: "(a) When an appointing authority recommends that an employee be transferred to less arduous duties or separated from state service, the appointing authority shall make such recommendation in writing to the Commissioner of Administrative Services and set forth therein in detail the reasons for such recommendation.

"(b) When recommendation for transfer is made under Section 5-244, the Commissioner of Administrative Services shall attempt to find suitable position for the affected employee in accordance with the requirements of the State Personnel Act.

"(c) When a recommendation for separation from state service is made under Section 5-244, it shall remain the responsibility of the appointing authority, after consultation with the Commissioner of Administrative Services, to effect such separation if indicated."

[3] Edward Burke, to whom the March 21, 2003 public works memo was sent, was the designee of the commissioner of administrative services for performing the less arduous duty search. Administrative services human resources consultant Joseph M. Hickerson succeeded Burke as the designee and performed the less arduous duty search.

Administrative services and public works also complied with § 5-244-1 (b) and (c) of the Regulations of Connecticut State Agencies. Administrative services was unsuccessful in its attempt to locate an available position for the plaintiff. Public works separated the plaintiff from service as an employee in good standing on June 1, 2003. The plaintiff's claim that public works failed to provide sufficient detail for the less arduous duties search is without merit. Public works complied with the applicable statute and regulation based on information provided by the plaintiff.

4

Claim of Failure by Defendants to Place Plaintiff's Name on Reemployment List for Laid Off Employees

The plaintiff claims in paragraphs twenty-five and twenty-six of her complaint that she should have had her name placed on a reemployment list applicable for those laid off from work because she was entitled to layoff status from public works pursuant to General Statutes § 5-241, as opposed to a § 5-244 separation due to infirmity, and that such reemployment list placement would have provided her with employment.

An examination of the relevant provision of the collective bargaining agreement regarding the rights of laid off state employees is critical in understanding the plaintiff's claim. The collective bargaining agreement provides that those laid off have a preferred status concerning reemployment by the placement of their names on a reemployment list for those laid off. "There shall be no appointment from outside State service until laid-off employees eligible for rehire and qualified for the position involved are offered reemployment." The plaintiff would have been eligible for placement to a vacancy as an assistant accountant had her separation been considered a layoff. The decision to separate the plaintiff from state service pursuant to § 5-244 resulted

in the placement of the plaintiff's name on a reemployment list for those separated from service following a leave without position held pursuant to General Statutes § 5-248 (e).[4] No vacancies became available from the reemployment list on which the plaintiff's name was placed.[5]

General Statutes § 5-241 and § 5-241-2 of the Regulations of Connecticut State Agencies address the layoff of state employees and the placement of the names of laid off employees on a reemployment list. Section 5-241 (a) provides in relevant part: "No employee in the classified service who has been performing his duties in a satisfactory manner as shown by the records of the department, agency or institution in which he has been employed shall be dismissed or laid off from his position because of lack of work, economy, insufficient appropriation, change in departmental organization, abolition of position or any cause *other than disability*, delinquency, incompetency, misconduct or neglect of duty, if any other employee in the same classification performing comparable duties with less state service is to be retained in the same department, agency or institution . . . ." (Emphasis added.)

[4] "When any employee has been on authorized leave of absence without his position being held and is ready to report for duty when a position is available, the Commissioner of Administrative Services shall refer the name of the employee to an appointing authority for possible reinstatement to a position in a class in which the employee has attained permanent status. The employee may be reinstated at the discretion of the appointing authority, provided no other employee has rights to the position pursuant to subsection (b) of section 5-241." General Statutes § 5-248 (e).

"When an employee on authorized leave of absence with position not held wishes to return to active service prior to or at the expiration of said leave, the appointing authority may, in his discretion, reinstate such employee if a vacancy exists. Otherwise, his name shall be placed on the appropriate reemployment list or lists." Regs., Conn. State Agencies § 5-248-2 (i).

[5] The complaint also references state employees bargaining agent coalition lists. State employees bargaining agent coalition list placement also requires layoff status. The plaintiff's name was not placed on a state employees bargaining agent coalition list.

Section 5-241 (b) provides in relevant part: "An appointing authority desiring to lay off an employee shall give him not less than two weeks' notice in writing, stating the reason for such action . . . . A copy of such notice shall immediately be forwarded to the Commissioner of Administrative Services. The commissioner shall arrange to have the employee transferred to a vacancy in the same or a comparable class or in any other position the employee is qualified to fill in any department, agency or institution. If there is no vacancy available or the employee refuses to accept the transfer, the commissioner shall cause the name of such employee to be placed on the reemployment list for the appropriate class for which he has attained permanent status or has the ability to qualify, as determined by the commissioner. During the period he is entitled to remain on the reemployment list, such an employee shall be rehired in the classification from which he was laid off or for which he is qualified, as vacancies occur, in the reverse order of layoff . . . ."

Section 5-241-2 (b) of the Regulations of Connecticut State Agencies provides in pertinent part: "An appointing authority may lay off an employee for lack of work, economy, insufficient appropriation, change in departmental organization, abolition of position, or any cause other than disability, delinquency, incompetence, misconduct or neglect of duty . . . ."

The collective bargaining agreement is consistent with § 5-241 and § 5-241-2 of the Regulations of Connecticut State Agencies as to the application of layoff status. "A layoff is defined as the involuntary, non-disciplinary separation of an employee from State service because of lack of work or economic necessity."

The failure to place the plaintiff's name on the reemployment list for those laid off and to have hired her from it cannot be considered in excess of statutory

authority because the plaintiff lost her job due to a disability as opposed to a lack of work. While the plaintiff's position was not held for her while on her last medical leave of absence, it remained open and she could have been placed in it if she was able to return to public works' financial management unit. The position was lost to public works only *after* the plaintiff's separation from state service. A layoff is for "any cause other than disability, delinquency, incompetency, misconduct or neglect of duty . . . ." General Statutes § 5-241 (a); Regs., Conn. State Agencies § 5-241-2. A layoff is a separation from state service by reason of the state's economic situation as opposed to disability. *Sullivan* v. *Morgan*, 160 Conn. 176, 183, 276 A.2d 899 (1970). State employees who have been laid off, unlike those state employees who are separated from service due to a disability, are entitled to the placement of their names on the reemployment list for laid off employees. General Statutes § 5-241; Regs., Conn. State Agencies § 5-241-1. The defendants, then, acted in compliance with the applicable statutes and regulations.

The placement of the plaintiff's name on a reemployment list for those separated from state service without position held was not a "sham," as she argues, but was consistent with all the provisions of the State Personnel Act and the collective bargaining agreement. The plaintiff, upon separation from state service, had reemployment rights inferior to those laid off because her separation was not due to a layoff. Reemployment list name placement simply on the basis of seniority would have been inappropriate because it would not have conformed with the provisions of § 5-228-1 (b) of the Regulations of Connecticut State Agencies and the collective bargaining agreement regarding preferential status for laid off state employees.[6] State employees

---

[6] Section 5-228-1 (b) of the Regulations of Connecticut State Agencies provides: "No appointment is to be made hereunder until laid-off employees eligible for re-hire and qualified for the position involved are offered reemployment."

who are laid off and state employees who are separated from service without position held must both be placed on the appropriate, respective reemployment lists. "In the case of layoff or demotion due to lack of work, economy, insufficient appropriation, change in departmental organization, or abolition of position, the name of a permanent employee eligible for reemployment shall remain for a period of three years on the *appropriate reemployment list* for any class in which he had permanent status." (Emphasis added.) Regs., Conn. State Agencies § 5-241-1 (d). "When an employee on authorized leave of absence with position not held wishes to return to active service prior to or at the expiration of said leave, the appointing authority may, in his discretion, reinstate such employee if a vacancy exists. Otherwise his name shall be placed on the *appropriate reemployment list* or lists." (Emphasis added.) Regs., Conn. State Agencies § 5-248-2 (i).

The plaintiff's construction of the State Personnel Act fails to read its provisions as a whole and is contrary to its terms. The defendants would have acted in excess of their statutory authority only if they had put the plaintiff's name on the reemployment list for laid off employees and rehired her from that list because that would have been in violation of the State Personnel Act. This is factually distinguishable from *Cox* v. *Aiken*, 86 Conn. App. 587, 590, 862 A.2d 319 (2004), cert. granted on other grounds, 273 Conn. 916, 871 A.2d 370 (2005), where the plaintiff alleged that the state acted in excess of statutory authority when it laid off a state employee with less seniority than the plaintiff in violation of § 5-241.[7] There, the Appellate Court affirmed the trial court's denial of a motion to dismiss, finding that

---

[7] Unlike the present case, the record in *Cox* does not contain any evidence provided by the parties that would have permitted the trial court to find otherwise when it passed on the defendants' motion to dismiss. Accordingly, the trial court was confined to the allegations of the complaint.

the allegations, if proven, were "sufficient to demonstrate that the defendants acted in excess of the authority vested in them by § 5-241." Id., 596.

The plaintiff's claim in paragraph twenty-five of her complaint that the collective bargaining agreement required that she be given layoff status is not supported by the terms of the collective bargaining agreement. The plaintiff was not separated from state service due to a lack of work or economic necessity.

The plaintiff's claim that public works represented, by letter dated February 28, 2003, that she would be laid off and that her name would be placed on the reemployment list is contradicted by the context of the paragraph in which the sentence quoted in paragraph fourteen of the plaintiff's complaint appears. "This leave would begin on [March 2, 2003] and continue for up to ninety days or until [June 1, 2003]. If your treating physician feels at any time during this period that you are able to return *to your position here*, you may contact this office to request reinstatement. If this has not occurred, or if we have not heard from you by close of business on [June 1, 2003], you will be separated from State service. If you are able to return to work but the Department of Public Works does not have a suitable position for you, you will be laid off and placed on the appropriate reemployment lists by the Department of Administrative Services. . . ." (Emphasis added.)

Public works responded to the plaintiff's February 26, 2003 letter and Andrekis' certification, both of which indicated that although the plaintiff could work, she could no longer work in "your position here" at public works' financial management unit. The plaintiff's inability to return to public works' financial management unit, coupled with the unavailability of a suitable position were the conditions under which the plaintiff could

be afforded layoff status as expressed in public works' letter. The grant of a leave of absence without position held only created the potential for layoff status. The representation made to the plaintiff by public works in its February 28, 2003 letter is consistent with § 5-241 and § 5-241-2 of the Regulations of Connecticut State Agencies. If the plaintiff was able to return to her position in public works' financial management unit but the position was not available because the leave was without position held, then the plaintiff would have been entitled to layoff status with her name on the reemployment list for laid off employees. The plaintiff's separation from state service then, would have been due to a layoff pursuant to § 5-241 and § 5-241-2 of the Regulations of Connecticut State Agencies as opposed to a separation from state service as an employee in good standing due to a disability pursuant to § 5-244.

The plaintiff's claim that public works violated § 5-248-5 of the Regulations of Connecticut State Agencies regarding the abolition of her position is also wrong.[8] Section 5-248-5 of the Regulations of Connecticut State Agencies is not applicable by its terms because, unlike the situation in the present case, it applies when a position is held. Moreover, the plaintiff's position was not abolished but remained open until after the plaintiff's separation from state service, at which time it was lost to public works.

Any other claim of action in excess of statutory authority is without merit. While administrative services did not have the plaintiff's correct address for notification purposes, it was corrected and it is inconsequential because administrative services' records show

---

[8] "When a position, from which an employee has been granted a leave of absence without pay and with notice that it was being held, is abolished due to lack of work, economy, insufficient appropriations or organizational change, the name of the employee shall be placed on the appropriate reemployment list or lists." Regs., Conn. State Agencies § 5-248-5.

no vacant position to which the plaintiff could have been appointed. Effective June 1, 2003, the plaintiff's name was placed on the reemployment list for those who were on leave with their positions not held, with her appropriate seniority, but no position was available for her from that date.

C

The Claim for Money Damages

The plaintiff also claims money damages in that she is seeking back pay and benefits since her separation from state service. The plaintiff, in her claim for relief, specifically requests "all back pay and benefits, including reinstatement of retirement accruals, vacation and sick leave accruals, seniority and all other employee benefits." A claim for retroactive compensation is a claim for monetary damages. See *Ann Howard's Apricots Restaurant, Inc.* v. *Commission on Human Rights & Opportunities*, 237 Conn. 209, 217, 228, 676 A.2d 844 (1996); see also *Cox* v. *Aiken*, supra, 86 Conn. App. 590 n.3.

The plaintiff argues that her requests for medical benefits, full seniority and "other employment" benefits for the period of separation are primarily equitable and are not barred by sovereign immunity. The authorities cited by the plaintiff supporting monetary relief against the state are inapplicable to the present case because this is not an administrative appeal taken pursuant to the Uniform Administrative Procedure Act (UAPA), General Statutes § 4-166 et seq. The cases cited by the plaintiff, *Chotkowski* v. *Connecticut Personnel Appeal Board*, 176 Conn. 1, 6, 404 A.2d 868 (1978), *Adamchek* v. *Board of Education*, 174 Conn. 366, 372, 387 A.2d 556 (1978), overruled in part by *Lee* v. *Board of Education*, 181 Conn. 69, 76 n.6, 434 A.2d 333 (1980), *Coppola* v. *Personnel Appeal Board*, 174 Conn. 271, 386 A.2d 228 (1978), and *King* v. *Personnel Appeal Board*, 35

Conn. Sup. 45, 49, 393 A.2d 520 (1978), are all appeals pursuant to the UAPA. Although the UAPA expressly waives sovereign immunity, allowing the court to "remand the case for further proceedings"; General Statutes § 4-183 (k); and "[order] the particular agency action, or [order] the agency to take such action as may be necessary to effect the particular agency action"; General Statutes § 4-183 (k); the present case is not such an appeal.

Our Appellate Court in *Cox* affirmed the trial court's denial of the defendants' motion to dismiss because the plaintiff alleged that the defendants acted in excess of statutory authority but also noted the trial court's ruling as to the unavailability of retroactive compensation for back pay, seniority and benefits, stating that "[t]he court held that the plaintiff's claim for retroactive compensation was a claim for money damages that could not be brought against the defendants without the permission of the claims commissioner." *Cox* v. *Aiken*, supra, 86 Conn. App. 590 n.3, citing *Miller* v. *Egan*, supra, 265 Conn. 321. Similarly, this court finds that in the present case, the plaintiff's claims for monetary relief such as back pay and benefits are barred by sovereign immunity because the plaintiff fails to allege that she received permission to sue for such relief from the claims commissioner. See *Miller* v. *Egan*, supra, 321.

D

Claim That the Defendants Have Violated the Plaintiff's Constitutional Right to Due Process of Law

The plaintiff claims that she has a cognizable property interest in continued employment so as to prohibit arbitrary action and to require reasonable cause for the implementation of § 5-244. The plaintiff maintains that she "had a property interest in her position and was entitled to due process and a hearing. Defendants have denied plaintiff a proper hearing."

A plaintiff must establish both that she was deprived of a property interest cognizable under the due process clause of the state or federal constitutions and that the deprivation occurred without due process of law in order to prevail on a due process claim. *Hunt* v. *Prior*, 236 Conn. 421, 442, 673 A.2d 514 (1996).

The defendants argue that the plaintiff has not been deprived of a property interest cognizable under the due process clauses of the state and federal constitutions. "Property interests are not created by the Constitution, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." (Internal quotation marks omitted.) Id., 437. "In the employment context, a property interest arises only where the state is barred, whether by statute or contract, from terminating . . . the employment relationship *without cause*." (Emphasis in original; internal quotation marks omitted.) *Legg* v. *DellaVolpe*, 228 F. Sup. 2d 51, 61 (D. Conn. 2002), quoting *S & D Maintenance Co.* v. *Goldin*, 844 F.2d 962, 967 (2d Cir. 1988).

General Statutes § 5-240 (c) and § 5-240-5a of the Regulations of Connecticut State Agencies address dismissal. Section 5-240 (c) provides in relevant part: "An appointing authority may dismiss any employee in the classified service when the authority considers the good of the service will be served thereby." Section 5-240 (c) further provides in relevant part: "A permanent employee shall be given written notice of such dismissal . . . [and] [s]uch notice shall set forth the reasons for dismissal in sufficient detail to indicate whether the employee was discharged for misconduct, incompetence or other reasons relating to the effective performance of the employee's duties . . . ." Section 5-240-5a (a) of the Regulations of Connecticut State Agencies provides: "An appointing authority may dismiss an employee for just cause."

The plaintiff in the present case has no cognizable property interest. Because she was not *dismissed* from employment, she has no claim of entitlement to continued employment. The plaintiff was separated from state service due to her doctor's certification to public works that she was *clinically* unable to continue working at public works' sole location of employment for an assistant accountant and public works' inability to transfer her. Accordingly, the just cause requirement for dismissal is not applicable to the plaintiff's separation from service due to disability pursuant to § 5-244. Dismissal from state service is punitive in nature, and it bars an employee from future state employment.

Section 5-240 (c) provides in relevant part: "The name of any such employee dismissed for incompetence or other reasons relating to the effective performance of the employee's duties shall be immediately removed from the eligible list in the office of the Commissioner of Administrative Services." In *Sullivan* v. *Morgan*, supra, 160 Conn. 185–86, our Supreme Court found, in interpreting General Statutes § 5-58, the precursor to § 5-244, that the General Assembly chose to grant a property interest in continued service that could be terminated for just cause only in the event of a dismissal as opposed to a nonpunitive separation from service due to a disability.

The plaintiff asserts that the State Personnel Act and the regulations promulgated pursuant to it, prohibit the arbitrary separation of permanent classified employees like her from state service. General Statutes § 5-240 (c). In *Sullivan,* our Supreme Court noted: "The very fact of the existence of . . . § 5-58 [now § 5-244] indicates that it was not the legislative intent that a punitive dismissal under [General Statutes] § 5-56 [now § 5-240] should be the only procedure by which a state employee could be removed from his position in the state service. An employee retired under § 5-58 is thereafter no longer employed by the state, and one who is transferred to

less arduous duties is thereby removed from his former position and the salary incident thereto. We would, in any event, be reluctant to ascribe to the legislature an intention to require a dismissal under the punitive provisions of § 5-56 in those cases where an employee had become physically or mentally incapable of, or unfit for, the efficient performance of his duties but where retirement or transfer could not be effectuated because of insufficient length of service, the unavailability of a suitable position with less arduous duties or the total mental incapacity of the employee. Nor, since § 5-58 was applicable only to an employee who had become 'incapable of or unfit for, the efficient performance of the duties of his position' by reason of physical or mental incapacity or other disability, would we assume that the legislature intended to require a dismissal proceeding under the punitive provisions of § 5-56 to determine whether he was justifiably discharged 'for the good of the service.' That would be an elaborate superfluity." *Sullivan* v. *Morgan*, supra, 160 Conn. 185. Separation from state service due to disability "[does] not constitute either a 'dismissal' for misconduct under § 5-56 [now § 5-240] or a 'layoff' for economic reasons under § 5-57 [now § 5-241]." Id., 184.[9]

The plaintiff's collective bargaining agreement also provides her no right to continued employment in the event of a disability. Employer action requiring just cause applies to suspension, demotion, reprimand and dismissal. Nondisciplinary separation from state service is not the subject of either the grievance or arbitration process. The plaintiff concedes in paragraph thirty-two of the second count of the complaint that the fact

[9] The regulatory definition of the term "just cause" further shows that dismissal does not include separation from state service due to disability. Regs., Conn. State Agencies § 5-240-1a (c). All of the examples given in § 5-240-1a (c) of the Regulations of Connecticut State Agencies regarding conduct prompting dismissal are related to misconduct or incompetence.

that this separation from state service was nondisciplinary was the basis of the arbitrator's award, which indicates that the plaintiff's grievance regarding her separation from state service was not arbitrable.

Even if the plaintiff does have a cognizable property interest in continued employment under the circumstances here, she was not denied adequate notice that she would be separated from state service. The February 28, 2003 letter from Andrews, public works administrator, to the plaintiff makes it clear that public works acknowledged receipt of her doctor's certification and did not dispute that she was unable to return to work at her current location. The letter further explains that the plaintiff's current work location is the only location at which public works employs assistant accountants and states that an additional medical leave of absence until June 1, 2003, without the plaintiff's position being held, will be granted. It also warns the plaintiff that she will be separated from state service if she is unable to return to her position at public works by that date. There is nothing incorrect about the statements in this letter. Advising the plaintiff of procedures in the layoff statute would, however, have been erroneous as explained previously in part II B 4 of this memorandum of decision.

The plaintiff was given a meaningful opportunity to be heard prior to her separation from state service. The February 28, 2003 letter from Andrews at public works advised the plaintiff to call public works with any questions regarding public works' information or the plaintiff's status. The plaintiff now claims that public works misinterpreted her letter as a notice to it of a disability, but the plaintiff had the opportunity to correct any misimpression and did not do so. The outcome of the plaintiff's union grievance proceedings comports with public works' interpretation of her letter. There was no need to schedule a meeting or a hearing in which the

plaintiff could present her side of the story or state her reasons why agency action should not be taken. Public works accepted, and was acting on, the information provided by the plaintiff.

The notice and opportunity to be heard were constitutionally sufficient pursuant to the three factors considered when evaluating, in the context of a procedural due process claim, whether an individual is constitutionally entitled to a particular judicial or administrative procedure: "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *Mathews* v. *Eldridge*, 424 U.S. 319, 335, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976). *Scinto* v. *Stamm*, 224 Conn. 524, 535, 620 A.2d 99, cert. denied, 510 U.S. 861, 114 S. Ct. 176, 126 L. Ed. 2d 136 (1993)." (Internal quotation marks omitted.) *Hunt* v. *Prior*, supra, 236 Conn. 439–40.

A state agency has an interest in transferring an employee to less arduous duties or separating from service any employee unable to do her job due to disability. There was no risk of erroneous deprivation here because the information relied on was from the plaintiff's own treatment provider, not an independent third party or an expert employed by public works with whom the plaintiff disagreed. There was no value to additional investigation or substitute procedural safeguards. Although the private interest in her employment is important, the plaintiff's separation did not involve the stigma of dismissal or prohibit her from future employment under § 5-240 (c). In fact, the plaintiff is again working for the state.

## E

### Individual Capacity Claims Against Andrews and Anderson[10]

As a preliminary matter, the court notes that the standard of review applicable to a motion to dismiss on the ground of statutory immunity is the same as the standard of review on a dismissal based on sovereign immunity. *Martin* v. *Brady*, 261 Conn. 372, 376, 802 A.2d 814 (2002).

The summons indicates that Andrews and Anderson were sued as managerial state employees.[11] Andrews was served through Verna Plona at public works and through the office of the attorney general. Anderson was served through the attorney general. The complaint does not indicate that either Andrews or Anderson were sued in their individual or personal capacities.

Our Supreme Court has set forth the following four part test to determine whether an action is actually against the state rather than a state employee in her individual or personal capacity: "(1) a state official has been sued; (2) the suit concerns some matter in which that official represents the state; (3) the state is the real party against whom relief is sought; and (4) the judgment, though nominally against the official, will operate to control the activities of the state or subject it to liability." *Spring* v. *Constantino*, 168 Conn. 563, 568, 362 A.2d 871 (1975).

The first two criteria of the test set forth in *Spring* are met because Andrews and Anderson clearly are

[10] The court will address the immunity of Andrews and Anderson under § 4-165 notwithstanding the fact that this issue was only addressed by the defendants, not by the plaintiff.

[11] The summons names Anderson as "Keith Anderson, Manager, Department of Administrative Services, State of Connecticut, State Office Building, 165 Capitol Ave., Hartford, CT" and Andrews as "William R. Andrews, Human Resources Administrator, Department of Public Works, 165 Capitol Ave., Hartford, CT."

state officials, and the claim involves their actions while representing the state of Connecticut. The third criterion is also met because the plaintiff is seeking relief that can only be provided by the state, including reinstatement, back pay and benefits, reinstatement of retirement accruals, vacation and sick leave accruals, seniority and all other employee benefits. The fourth criterion is met because any judgment against the defendants would operate to control activities of the state, specifically reinstatement of the plaintiff to her former position, reinstatement of retirement accruals, vacation and sick leave, seniority and other employee benefits. Furthermore, the state would be subjected to liability for back pay. Accordingly, the court concludes that although the plaintiff names Andrews and Anderson separately, the claims against these defendants are actually against the state.

Earlier in this opinion, the court concluded that all of the claims against the state are barred by sovereign immunity. Even if the court were, however, to conclude that the elements of the test set forth in *Spring* v. *Constantino*, supra, 168 Conn. 568, were not met and that the plaintiff had successfully pleaded a cause of action against Andrews and Anderson individually for purposes of this motion to dismiss, the plaintiff has not pleaded facts to support a finding that the actions of these defendants were wanton, reckless or malicious. The court already found that the defendants' actions were proper in analyzing whether the defendants had exceeded their statutory authority. Accordingly, Andrews and Anderson would be immune from personal liability pursuant to § 4-165. Under those circumstances, if the plaintiff had wanted to pursue a claim against Andrews and Anderson, she should have presented it to the claims commissioner.

## III

## CONCLUSION

The pleadings along with the defendants' affidavits and other exhibits establish the defendants' immunity under the common-law doctrine of sovereign immunity. The factual allegations contained in the plaintiff's complaint rely on the wrong law or misstate the applicable law and, therefore, are not sufficient to demonstrate that the defendants acted in excess of the statutory authority vested in them by § 5-244. The plaintiff's complaint is dismissed in its entirety, and judgment shall enter in favor of the defendants.